THE CITY OF HUNTINGTON *v.* CAST ET AL.

[No. 18,333.   Filed January 6, 1898.]

JUDICIAL NOTICE.—*Census.*—Courts will take judicial notice of a census or other enumeration made under the authority of the State or of the United States.   *p. 258.*

MUNICIPAL CORPORATIONS.—*Metropolitan Police Commissioners.— Appointment.—Census.*—Under section 1 of the act of February 28, 1897, providing for the establishment of a board of metropolitan police commissioners within and for cities of 10,000 inhabitants, according to the United States census of 1890, or according to a census taken under the authority of the mayor of such city, a census taken by the mayor must be an official enrollment of the people of the city, and must be a public document preserved in the archives of the city subject to the inspection of all those interested.   *pp. 256-259.*

SAME.—*When Possession of Property Protected by Injunction.*—Where it is sought to take possession of the police property of a city, without authority of law, those in possession may protect their rights and the rights of the city by the remedy of injunction.   *p. 259.*

SAME.—*Appointment of Metropolitan Police Commissioners.—Validity.*—Under section 1 of the act of February 28, 1897, providing for the appointment by the Governor of a board of metropolitan police

commissioners within and for cities of 10,000 inhabitants according to the United States census of 1890, or according to a census taken under the authority of the mayor, the Governor's right to appoint is determined by the statement as to population certified to him by the mayor; but if the mayor's certificate is not based upon a census, such as is contemplated by the statute, the appointments have no validity. *p. 260.*

From the Huntington Circuit Court. *Reversed.*

*O. W. Whitelock, S. E. Cook, J. Fred France* and *Z. T. Dungan,* for appellant.

*J. B. Kenner* and *U. S. Lesh,* for appellees.

HOWARD, C. J.—By section one of an act of the General Assembly, in force February 28, 1897 (Acts 1897, p. 90), section 3106g, Horner's R. S. 1897, it is provided that: "In all cities of this State of ten thousand inhabitants, according to the United States census of 1890, or according to a census taken under the authority of the mayor of said city, and not exceeding thirty-five thousand inhabitants, according to the United States census of 1890, there shall be established within and for said cities, a board of metropolitan police commissioners, to consist of three members to be appointed by the Governor."

By section five of the same act, provision is made that such board "shall have the custody and control of all public property, including station houses and city prisons, patrol wagons, books, records and equipments belonging to the police department."

In the first paragraph of the complaint in this case it is alleged that the appellant city has less than 10,000 inhabitants; that, through her common council, she has exclusive control of the streets and alleys, public buildings, and police department of said city; that the appellees Ayers, McClelland, and Cline, under a pretended and illegal appointment by the Governor as a metropolitan police board, are threatening to take

possession and control of said streets and alleys, public buildings, and police department, and to deprive appellant of such control; that the appellee, Cast, is mayor, and chairman of the police board of said city, and is threatening to turn over to his co-appellees all the equipments of said police force. The prayer is for a restraining order, and that upon the final hearing the appellees "be perpetually enjoined from in any way interfering or taking control, supervision, or management of the streets and alleys, public buildings, police department, or any part thereof, until they establish their right by law to said office."

In a second paragraph of complaint the following, with other, additional allegations are found: That prior to the commencement of this action, the appellee Cast, as mayor of said city, "took a pretended census thereof; that he included in said census inhabitants outside of the corporate limits of said city; that said census included names of persons who are not inhabitants thereof; but she says that she cannot at this time give the exact facts concerning said census, for the reason said mayor, though often requested, refused to report the same to the council, or allow the members to examine it, but that he caused or permitted the same to be destroyed, and has failed to file the same in the clerk's office of said city, or with the papers in his office; that by deducting the inhabitants of said territory outside of said city, and the other names as above, it will leave the inhabitants much less than 10,000."

It is assigned as error that the court sustained a demurrer to each paragraph of the complaint, and dissolved the temporary restraining order.

One contention in support of the ruling on the demurrer is, that the complaint fails to state that the

city of Huntington did not have a population of 10,000 according to the United States census of 1890. But "the court," as said in *Denney* v. *State*, 144 Ind. 503, 525, 31 L. R. A. 726, "will take notice of a census or other enumeration made under the authority of the State, or of the United States;" and we know that the city of Huntington did not have 10,000 inhabitants according to the census of 1890. *Stultz* v. *State*, 65 Ind. 492, 498; *State* v. *Swift*, 69 Ind. 505, 509.

If therefore the appointment of the appellees Ayers, McClelland, and Cline as metropolitan police commissioners can be sustained under the statute cited, it must be by reason of the census said to have been taken by the mayor. But it is admitted, by the demurrer to the second paragraph of the complaint that the mayor never made such census public; that he refused to allow the members of the common council to examine it; that he failed to file it in the city clerk's office, or with the papers in his office; and that he caused or permitted it to be destroyed. The question then arises whether the enumeration so made, and the evidences of which are nowhere to be found, can be called a "census" as provided for in the statute in question.

The statute mentions the census to be taken by the mayor in connection with the census taken by the United States. Even if it were not mentioned in such connection, we should know that the census provided for in the statute, to be taken by the mayor of the city, must be an official enumeration of the people, and as such a public record. The standard definitions are to this effect. Webster says that a census is "An official registration of the number of the people." The Century Dictionary: "An official enumeration of the inhabitants of a state or country, with details of sex and age," etc. The Standard Dictionary: "An official

numbering of the people of a country or district." Burrill, Law Dict.: "In the Roman law. A numbering or enrollment of the people, with a valuation of their fortunes." Black, Law Dict.: "The official counting or enumeration of the people of a state or nation, with statistics," etc. Bouvier, Law Dict.: "An official reckoning or enumeration of the inhabitants and wealth of a country."

The census to be taken by the mayor, in contemplation of the statute before us, was, therefore, in the first place, to be an official enrollment of the people of the city of Huntington. Such an enrollment or registration of the people was also to be a public document, to be preserved in the archives of the city, where it might be subject to the inspection of all those interested. A census is not merely a sum total, but an official list, containing the names of all the inhabitants. It is confessed that there was here no such census, and it must therefore follow, as we think, that there was no authority, under the statute, for the report made by the mayor to the Governor of the number of the inhabitants of the appellant city.

It is also argued that the action brought by appellant was not the proper one; that this was a controversy as to the right to hold an office, and hence that *quo warranto*, and not injunction, was the proper remedy. If, however, appellees were proceeding, without authority of law, to take possession of the police property of the city, certainly those in possession might protect themselves from such invasion of their rights and the rights of the city by enjoining those who sought to wrest from them such possession until authority to do so were first shown. *Erwin* v. *Fulk*, 94 Ind. 235; *City of Delphi* v. *Startzman*, 104 Ind. 343; *Central Union Tel. Co.* v. *State*, 110 Ind. 203.

The welfare and good order of society and govern-

ment require that those engaged in the discharge of public duties should not be disturbed by claimants whose right to discharge such functions is as yet uncertain. Equity will protect the possession of the incumbents from any unlawful intrusion. The public welfare requires that such protection should not be left to the totally inadequate remedy of an action for trespass. See also *Palmer* y. *Foley*, 36 N. Y. Super. Ct. 14.

We do not think there is in the case any question as to the right of the Governor to appoint. The Governor's power is derived from the statute, and if that gave no right to the creation of a board of metropolitan police commissioners for the city of Huntington, as we hold it did not, under the facts stated in the complaint, then there could be no such office. The Governor acted, and rightfully so, under the statement as to population certified to him by the mayor; but the mayor's certificate not being based upon any census such as contemplated by the statute, was itself without any force, and the appointments made upon such information can have no validity under the law. *Board, etc.,* v. *State,* 61 Ind. 379; *State* v. *Harrison,* 113 Ind. 434, 438.

The judgment is reversed, with instructions to overrule the demurrer to each paragraph of the complaint, and for further proceedings.