**STETSON O. SPROUL, as Tax Collector of the County of Palm Beach, a Political Subdivision of the State of Florida, v. STATE OF FLORIDA, ex rel. W. B. SMITH.**

16 So. (2nd) 109                                        June Term, 1943
January 4, 1944                                              Division B

*J. Tom Watson,* Attorney General, and *Lawrence A. Truett,* Assistant Attorney General, for appellant.

*Beacham & Gaulden, R. R. Saunders* and *J. B. Patterson,* for appellee.

BROWN, J.:

The appellee here, W. P. Smith, filed a petition for an alternative writ of mandamus in the Circuit Court of the 15th Judicial Circuit in which he alleged that he was a vendor

of intoxicating liquors in the County of Palm Beach and had been a duly licensed vendor for the past three years and that in his place of business intoxicating liquors were sold and consumed on the premises. That according to the last federal census of 1940 the population of Palm Beach County was 79,895 and that pursuant to the controlling statute relator, on September 22, 1942, tendered and paid to the respondent tax collector the sum of $1200.00 which was accepted and vendor's license duly issued. That relator on September 23, 1943 tendered the respondent the sum of $1200.00 for renewal of said license and respondent refused to accept said sum of money and demanded that relator pay the sum of $1500.00 as a condition precedent to issuing the new license. That it was the clear legal duty of respondent to issue said new license to relator on payment of said sum of $1200.00, and prayed that the court would issue its alternative writ of mandamus commanding tax collector to issue said license upon the payment of said sum of $1200.00, or show cause why he failed and refused so to do. The alternative writ was issued as prayed and the respondent tax collector filed a return, in which he admitted that according to the last federal census as recorded the population of Palm Beach County was as above stated but alleged that he refused to acept the sum of $1200.00 and demanded that relator pay the sum of $1500.00 because the Legislature had in 1943 adopted an Act, Chapter 22205, Acts of 1943, which provided for the taking of a state census to determine the number of inhabitants in Palm Beach and Broward counties; that pursuant to such act a census was duly taken and the population of Palm Beach County was determined to be 100,469, and the population of Broward County was determined to be 49,274, and that by reason thereof the 15th Judicial Circuit became entitled to an additional judge. That under Section 561.34, Florida Statutes, 1941, (being Section 5 of Chapter 16774, Acts of 1935) the license tax for vendors of beverages under said Act is fixed on a graduated basis according to population and that under paragraph 4 of Section 561.34 "vendors operating places of business where consumption on the premises is permitted in counties having a population of over 100,000, according to

the last state or federal census" the state license tax was fixed at $750.00, and the county tax as provided by the Act is an amount equal to the state tax, which made the license tax due from relator $1500.00, and the relator not having tendered such sum, respondent had declined to give him a license.

The relator filed his motion for peremptory writ notwithstanding the return, and the court granted the motion and made an order directing the clerk to issue the peremptory writ against the tax collector as prayed upon the payment of the sum of $1200.00 for the annual period from October 1st, 1943 to October 1st, 1944. The peremptory writ was duly issued as directed and from the court's order granting the peremptory writ, this appeal was taken by the respondent tax collector.

Our view is that the action of the circuit court was in accordance with the intent and purpose of Section 5 the Beverage Act of 1935, Chapter 16774, Acts of 1935, and now appearing as Section 561.34 of Florida Statutes 1941. Under paragraph 4 of section 5 of said beverage act vendors of intoxicating beverages operating places of business where consumption on the premises is permitted in counties having a population of over 60,000 and not over 100,000, according to the latest state or federal census, shall pay a state license tax of $600.00 and under paragraph 4 of the same section, such vendors in counties having a population of over 100,000 according to the last state or federal census must pay a state license tax of $750.00. A similar amount must also be paid to the county.

The beverage act of 1935 was a general act, very comprehensive in its terms, and being a taxing as well as a regulatory statute, was intended to have uniform operation throughout the State in all counties in which the sale of liquors was not prohibited by law, and our view is that when the Legislature used the words "according to the last state or federal census" it had in mind the regular federal census which is taken every ten years and the regular state-wide census which is likewise taken every ten years, these censuses being so staggered as to take place every five years.

Section 5 of Article VII of our Constitution reads as follows:

"The Legislature shall provide for an enumeration of all the inhabitants of the State by counties for the year 1895 and every ten years thereafter."

The federal census is taken at the end of each decade of ten years. So it is that we have a census of the entire State, and of each and every county in the state, either by the State itself or by the Federal government, every five years. When the Legislature in the beverage act decided to determine and graduate the amount of the licenses to be paid in each and every county in the State according to population within certain brackets and according to "the latest State or Federal census" the Legislature must certainly have had in mind these fixed and regular state-wide censuses above referred to, which, one or the other is taken every five years. This gives statewide uniformity to the operation of this state-wide act and prevents the act from having a discriminatory effect.

For instance, this special census which was taken only for Palm Beach and Broward counties under this special Act, Chapter 22205, Acts of 1943, did show an increase in population in those counties, but it is quite certain that in a number of counties in the State, during the period from 1940 to 1943, there had likewise been a considerable increase in the population. Therefore the only way to prevent the Beverage Act of 1935 from having a discriminatory effect is to give to that statute the construction hereinabove placed upon it.

Section 1, Article IX of our Constitution, requires that the Legislature shall provide for uniform and equal rates of taxation, and Section 20, Article III, provides that the Legislature shall not pass special or local laws for the assessment and collection of taxes for State and county purposes.

The Legislature of 1943 passed an Act, Chapter 21637, providing that the number of judges of the 15th Judicial Circuit shall be one for every 50,000 inhabitants or major fraction thereof as may be determined pursuant to law. Then at the same session the Legislature adopted Chapter 22205 providing for the taking of a "state census" in the counties of Palm Beach and Broward and required the Com-

missioner of Agriculture to carry into effect the provisions of the Act. Both of these statutes were approved by the Governor on the same date, April 21, 1943, and according to the terms of the respective Acts, they became effective on that date. It is conceded that the purpose of these statutes was to determine whether or not the 15th Judicial Circuit was entitled to an additional circuit judge. Pursuant to Chapter 22205, a census of the two counties named was promptly taken and this census revealed a population sufficiently high to authorize the appointment of an additional circuit judge, which appointment was duly made by the Governor. The constitutional validity of neither one of these special statutes is questioned by counsel for either of the parties to this suit. It may well be that both of these special or local laws were expressly permitted by the Constitution, but neither of them dealt with taxation.

Section 43 of Article V of the Constitution which was adopted in 1922, provided for the appointment of additional circuit judges, and embraced a provision reading: "No additional circuit judge or judges shall be authorized to be appointed in a circuit having less than 75,000 inhabitants by the last federal or state census occurring next before the passage of the law for his or their appointment." On May 29, 1923, Governor Cary A. Hardee requested the opinion of this Court as to whether or not he would be authorized to appoint an additional judge for the 11th judicial circuit. In his letter the Governor stated that the Legislature then in session had passed an Act providing for a census in Broward, Dade and Monroe counties which then comprised the 11th judicial circuit, and that the census had been taken and a copy of certificate of the Commissioner of Agriculture showing the result of the census was attached to his written request. On the following day this Court rendered the advisory opinion requested. The Court quoted the pertinent portion of Section 43 of Article V of the Constitution, above referred to, and stated that it appeared from the date transmitted to the court that the "state census" taken in pursuance of the Act counties revealed a population in Dade and Monroe counties, from which complete returns had been received of

90,028 inhabitants and that it therefore became the executive duty of the Governor to appoint an additional judge for the 11th Judicial Circuit, inasmuch as the Legislature at the same session had adopted an Act, approved by the Governor on May 28, and which thereby became a law, providing for the appointment of an additional circuit judge for the 11th Judicial Circuit. The Court remarked in the opinion that after this census was taken the Legislature provided for the appointment of such additional circuit judge. The opinion embraced this language: "The census that was completed on May 20, 1923, was the 'last State census' occurring 'before the passage of the law' for the appointment of an additional circuit judge for the 11th judicial circuit, and it showed that the 11th circuit had over 75,000 inhabitants." See 85 Fla. 505, 97 So. 127.

The census dealt with in that advisory opinion, like the one we are dealing with, was entirely sufficient for the purpose for which it had been authorized by the Legislature and it was a State census in the sense that it had been taken under the direction of a state officer. But strictly speaking it was not a state census such as is provided for by Section 5, Article VII of the Constitution; nor was it a State census within the meaning and intent of those words as used in Section 5 of Chapter 16774, Acts of 1935, now appearing as Section 561.34, Florida Statutes 1941, which was a state-wide taxing statute and provided for licenses in the various counties in the State to be graduated according to the population of said counties as shown by "the latest State or Federal census," thus undoubtedly referring to the state-wide decennial federal census and to the decennial state-wide State census commanded to be taken by Section 5 of Article VII of the Constitution. Certain it is that the Legislature of 1935, when it passed this Beverage Act, could not possibly know that the Legislature of 1943 would authorize a census to be taken in the two counties here involved, Palm Beach and Broward, in 1943, and it is also quite certain that they did not consider the possibility or the probability of such a census being taken. However, the Legislature of 1939 did know that a state-wide decennial census would be taken every ten years

and that a federal census covering every state in the union would be taken every ten years and undoubtedly these were the kinds of census which the Legislature had in mind when they framed and adopted the Section of the Beverage Act above referred to. Since the advisory opinion above mentioned was rendered by this Court in 1923, Section 45 of Article V of the Constitution was adopted in 1934. This Section provides *inter alia* that no judicial circuit shall embrace less than 50,000 inhabitants according to "the last preceding state of federal census." Paragraph (c) of said Section 45 reads as follows:

"There shall be one circuit judge to each judicial circuit but additional circuit judges for judicial circuit may be provided for by law as authorized by Section 43 of amended Article V of this Constitution, but the total number of circuit judges apportioned to any one judicial circuit shall not exceed one circuit judge for every fifty thousand inhabitants, or major fraction thereof, after this amendment shall have been put into effect."

It may be noted that the above quoted paragraph does not provide how "the 50,000 inhabitants or major fraction thereof" shall be determined unless the intention was to follow the methods provided in the first paragraph of said section 45. But it is not necessary for us to determine this question here. It is conceded by counsel for both parties to this case that the two special acts adopted at the 1943 session of the Legislature for the purpose of determining the population of Palm Beach and Broward counties and authorizing the appointment of an additional circuit judge were entirely sufficient to accomplish their purpose. But neither one of these special statutes had anything to do with taxation and the census taken in pursuance of one of them was not the kind of census which the Legislature had in mind when it adopted the Beverage Act of 1935; nor can this special statute providing for a state authorized census in two counties of the state be allowed to disrupt the uniform application of the license tax provisions of said Beverage Act without doing violence to the evident legislative intent.

In this general connection, see State v. O'Neil, 99 Fla.

1053, 128 So. 489 and Ronde v. Seavey, 4 Wash. 91, 29 Pac. 768.

For the reasons above pointed out the order appealed from is

Affirmed.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.