No. 37,807

WASHINGTON TOWNSHIP OF NEMAHA COUNTY, KANSAS, a Municipal Corporation, *Appellant,* v. GENE HART, as Treasurer of Nemaha County, Kansas; THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a Corporation; and FRED HORN, DALE A. FISHER, and C. I. MOYER, as Members of the State Commission of Revenue and Taxation of the State of Kansas, *Appellees.*

(215 P. 2d 180)

Opinion filed February 28, 1950.

*Harry A. Lanning,* of Seneca, argued the cause, and *William M. Drumm,* also of Seneca, was with him on the briefs for the appellant.

*Mark L. Bennett,* of Topeka, argued the cause for appellee The Chicago, Rock Island and Pacific Railroad Company; *Mason Mahin,* of Smith Center, was on the briefs for appellee The State Commission of Revenue and Taxation; and *John D. Cunningham,* of Seneca, and *Clayton M. Davis,* of Topeka, were with Mr. Bennett on the briefs for appellee The Chicago, Rock Island and Pacific Railroad Company.

The opinion of the court was delivered by

ARN, J.: This is an appeal by Washington township of Nemaha county from an order sustaining a demurrer to the petition and from an order sustaining a motion to quash the alternative writ of mandamus in a mandamus proceeding instituted by the township to require the county treasurer to distribute and pay to the township certain taxes which the Chicago, Rock Island and Pacific Railroad Company had paid under protest. In addition to the county treas-

urer of Nemaha county, the Chicago, Rock Island and Pacific Railroad Company and the three members of the State Commission of Revenue and Taxation were made defendants.

The petition alleges that pursuant to and as authorized by G. S. 1947 Supp., 80-1413, the township submitted to the qualified electors of the township residing outside the corporate limits of any city at a general primary election the question of levying a special tax of three mills for two years to raise funds for the purpose of improving the township roads; that the election was held August 2, 1948, and, a majority voting in favor thereof, the township levied a tax of 2.725 mills on all the taxable tangible property in the township outside the corporate limits of any city; that the levy was made and extended upon the tax rolls of Nemaha county by the county clerk. A tax of $441.61 was levied against property of the defendant Chicago, Rock Island and Pacific Railroad Company; that the railroad company paid this amount less two percent discount ($440.16) under protest; that said protested tax was placed in the "protested tax account" by the county treasurer and has not been disbursed. The defendant railroad company protested the payment of said tax upon the sole and only ground that the tax was excessive, illegal and unlawful in its entirety as being contrary to the budget law of the state of Kansas and particularly G. S. 1947 Supp. 79-2930, and a copy of the protest is made a part of the petition as exhibit A. The railroad company made application to the state commission of revenue and taxation and pursuant thereto said commission made an order on March 14, 1949, finding that the 2.725 mill levy was illegal and ordered that the county treasurer refund to the railroad company the protested tax in the amount of $440.16; and a copy of the commission's order is attached to the petition as exhibit B. The petition further alleged:

"The 2.725 mill levy, voted and extended as above set forth, was not included nor shown in the 1948 budget prepared, adopted and filed prior to the date of said election, by the Township Board of plaintiff township; the laws of the State of Kansas, including the budget law, do not require that levies and expenditures authorized by a vote of the municipality be shown in the budget; any levy authorized by a vote of the municipality may be lawfully and legally made and extended without being first included and shown in the budget of such municipality.

"Plaintiff has demanded of the defendant Treasurer the distribution and payment to it of said protested taxes in the amount of $440.16, but said defendant Treasurer has refused to make distribution and payment thereof to plaintiff. Plaintiff has no adequate remedy at law."

Exhibit A attached to the petition is the protest filed by the railroad company which included a copy of the Washington township proposed budget made pursuant to G. S. 1947 Supp., 79-2929, and published June 17, 1948, as follows:

"SPECIAL ROAD FUND

|  | Preceding Year 1947 | Current Year 1948 | Proposed Year 1949 |
|---|---|---|---|
| Total Expenditures .............. | 4279.59 | 4250.00 | 172.77 |
| RECEIPTS: |  |  |  |
| Unencumbered Township Bal., Jan. 1 ...................... | ....... | .98 | 1154.77 |
| Received from county treasurer (general property tax)....... | 4280.57 | 3611.01 | 0 |
| Receipts from residue sales tax | ....... | 774.78 | 0 |
| Receipts from back tax collections .................. | ....... | 18.00 | 18.00 |
| Total Receipts, incl. Jan. 1 Bal... | 4280.57 | 4404.77 | 172.77 |
| Less: Expenditures ............ | 4279.59 | 4250.00 | 172.77 |
| Balance Forward ........... | .98 | 154.77" |  |

This protest further alleged in part:

"It will be noted from the above that the total to be expended in the year 1949 from the Special Road Fund was $172.77 and this expenditure was to be financed only by a balance on January 1, 1949, and back tax collections during the year 1949 and an ad valorem tax requirement was unnecessary. '

"The Special Road Fund levy of 2.725 mills extended by the county clerk in Washington Township is excessive, illegal and unlawful in its entirety and is contrary to Section 79-2930, G. S. 1947 Supp."

Exhibit B attached to the petition is the order of the state commission of revenue and taxation dated March 14, 1949, finding that the adopted budget would exceed the amount of funds in the special road fund as originally published in the proposed budget and that the governing body did certify a tax levy which would produce revenue in excess of that which is required to finance the appropriation of the fund budget; and that the special road fund levy made in Washington township, Nemaha county, Kansas, was and is illegal to the extent of 2.725 mills, which applied to protestant's valuation of $163,159 in said taxing district, produced an illegal and excessive assessment against the protestant in the sum of $440.16; and ordering that the county treasurer refund to the railroad company the $440.16 tax paid under protest.

The township's verified motion for alternative writ of mandamus

contained many of the allegations of the petition and further alleged:

"The 2.725 mill levy, voted and extended as above set forth, was not included nor shown in the 1948 budget prepared, adopted and filed by the Township Board of plaintiff township; the laws of the State of Kansas, including the budget law, do not require that levies and expenditures authorized by a vote of the municipality be shown in the budget; any levy authorized by a vote of the municipality may be lawfully and legally made and extended without being first included and shown in the budget of such municipality."

The district court allowed an alternative writ of mandamus commanding the county treasurer either to distribute and pay to the plaintiff township the taxes paid by the defendant railroad company under protest, or to show cause why he had not done so. The defendants demurred to the petition and moved to quash the alternative writ. From an order sustaining both the demurrer and motion to quash, and rendering judgment in favor of defendants for costs, the plaintiff township appeals.

Appellant contends that G. S. 1947 Supp., 80-1413 (enacted 1945 and amended 1947) authorized calling an election, and then after a favorable vote, authorized the subsequent tax levy for improvement of township roads, although this item had not been mentioned in the budget of June 17. Section 80-1413 provides:

"The township board of any township may, upon resolution adopted by a majority of the board, submit to the qualified electors of the township who reside outside of the corporate limits of any city, at any general election or special election called for that purpose as provided by law for bond elections, the question of levying a special tax of not to exceed ten mills for not to exceed two years for the purpose of raising funds with which to improve township roads. The township board shall have the authority to call such elections. At such election the question on the ballot shall be stated in substantially the following form: (Shall ................ township in ................ county, Kansas, levy a tax of ............ mills for ............ year(s) to raise funds for the purpose of improving the township roads?' The judges of the election shall have power to determine the residence qualifications of voters under this act. *If a majority of those voting on such question shall vote in favor thereof the township board shall levy the tax as authorized* on all the taxable tangible property in such township which has a tax situs outside the corporate limits of any city. *Such levy shall be in addition to all other taxes authorized or limited by law.* In counties not operating under the county road unit system, the proceeds of such levy shall be used by the township board for the sole purpose of grading, sanding, graveling or otherwise improving township roads and shall first be used on township roads which are mail routes and on roads leading from mail routes to schools and cemeteries in the township. In counties operating under the county road unit system, the county

treasurer shall place the proceeds of such levy in a special fund to be used by the board of county commissioners for the sole purpose of grading, sanding, graveling or improving roads in the township voting such levy and shall first be used on roads which are mail routes and on roads leading from mail routes to schools and cemeteries in the township." (Emphasis supplied.)

Since the deadline for making the budget was August 1, 1948 (G. S. 1947 Supp., 79-2927), appellant further argues that it would have been impossible to itemize this proposed expenditure in the June 17 budget because it was not known then whether it would be adopted by the electorate, and it was not then known what amount a three mill levy would raise.

Another section of the statutes upon which appellant relies is G. S. 1947 Supp., 79-2935, which provides:

"It shall be unlawful for the governing body of any taxing subdivision or municipality in any budget year to create an indebtedness in any manner or in any fund after the total indebtedness created against such fund shall equal the total amount of the adopted budget of expenditures for such fund for that budget year. Any indebtedness incurred by the governing body or any officer or officers of such taxing subdivision or municipality in excess of said amount shall be void as against such taxing subdivision or municipality: *Provided, That indebtedness may be created in excess of the total amount of the adopted budget of expenditures for the current budget year only when payment has been authorized by a vote of the municipality. . . .*" (Emphasis supplied.)

Appellee argues that the word "created" as used in the last quoted statute is in the past tense, and therefore does not apply to any indebtedness to be created in the future pursuant to a vote of the electorate. This argument seems to make too much of a play on words—and this court takes the view that section 79-2935 anticipated the very thing that was later authorized by the enactment of section 80-1413.

Isn't the purpose of the budget law to require that all proposed expenditures be itemized and published for the scrutiny of the public, to the end that every constituent of the governing body may examine the items of anticipated expenditures? We think that is a fairly good analysis of its purpose, or one of them at least. That being so, it seems obvious that such purpose is accomplished when the question of a proposed expenditure is stated on the ballot and voted upon by the electorate at a general election after the proposition thus voted upon has been previously published as required by law.

A similar question was before this court in *State, ex rel., v. Re-*

*public County Comm'rs,* 148 Kan. 376, 82 P. 2d 84, and appellant relies heavily upon that case. There the voters had authorized a building indebtedness for the construction of a new courthouse, the old one having been destroyed by fire. Appellee attempts to distinguish that case in that there the authority had been granted for payment of indebtedness by the issuance of anticipation warrants, which brought that situation directly within section 79-2935, G. S. 1947 Supp., because the indebtedness had been actually *created* by the vote of the electorate. Here again, appellees stress their contention that "created," as used in section 79-2935, implies past action. In the Republic County case, this court said:

". . . the legislature wrote into each of these statutes [the cash basis law, the budget law, and the tax limitation law] sections stating to what they do not apply. For example: . . . In the budget law: '. . . *Provided,* The provisions of this section shall not apply to contracts and indebtedness created, the payment for which has been authorized by a vote of the electors of the municipality . . .' (Laws 1933, ch. 316, § 11; G. S. 1935, 79-2935.)"

Section 79-2935 has been amended since that decision and while the wording of the proviso is substantially the same now as then, the present language seems to quite clearly permit a tax levy for expenditures to be made during the current budget year in excess of the adopted budget when (and only when) the payment, the expenditure, or the tax levy necessary to pay therefor, is authorized by a vote of the electorate.

Appellees also cite G. S. 1947 Supp., 79-2930 as one of the specific sections of the budget law violated by the instant tax levy. A portion of that section reads:

". . . Each fund of the adopted budget filed with the county clerk in no event shall exceed the amount of such fund in the proposed budget as originally published: *Provided,* The governing body of each taxing subdivision or municipality shall not certify a levy to the county clerk which will raise an amount in excess of that portion of said budget to be derived from said tax levy, or which will exceed the maximum levies prescribed by law. . . ."

The language of section 79-2930 is quite clear, and of course has general application unless exceptions are elsewhere made, as in cases where there has been a vote by the electorate.

The real question before this court in the instant case, therefore, is whether the vote of the electorate authorized the payment of an indebtedness. A majority of this court concludes that it did by reason of the proviso contained in section 79-2935. When the electors voted the levy, it became an obligation authorized by popular vote.

That vote actually authorized the payment of an indebtedness by a levy to be made in the current year, and it was mandatory upon the township board to levy the tax as provided by section 80-1413. The budget law has no application to such a tax levy authorized by a vote of the electors. It follows that the protest of the Chicago, Rock Island and Pacific Railroad Company should not have been allowed.

Appellee, the State Commission of Revenue and Taxation, devotes considerable argument to the proposition that it acted within its jurisdiction in determining the protest involved. There is no doubt but that this commission does have jurisdiction to exercise its administrative judgment or discretion in the interpretation of our taxing laws (*Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957; *Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620, 42 P. 2d 936). However, it does not follow that there is no recourse to courts of law to determine whether such interpretation was a proper one— and the appellee tax commission does not contend that its ruling on the allowance or denial of a protest is final and unappealable.

In *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs,* 138 Kan. 516, 518, 27 P. 2d 229, we held that a decision of the tax commission does not preclude this court from examining the questions submitted and rendering a proper judgment thereon.

It follows that the levy made by the township was valid and the trial court erred in sustaining the demurrer of the state commission of revenue and taxation, and the railroad company's motion to quash the alternative writ of mandamus.

Another proposition necessary of mention but not briefed or argued by counsel for the parties hereto, is the validity of a protest when taxes are paid voluntarily. Previous decisions of this court indicate that when the full amount of the tax is paid prior to December 20 for the purpose of obtaining a discount as to the last half of the tax, such last half is paid voluntarily (*Railway Co. v. City of Humboldt,* 87 Kan. 1 [Syl. ¶ 2], 123 Pac. 727; *Bush v. City of Beloit,* 105 Kan. 79 [Syl. ¶ 3], 181 Pac. 615; *Atchison, T. & S. F. Rly. Co. v. Montgomery County Comm'rs,* 121 Kan. 428, 247 Pac. 442; *First National Bank v. Sheridan County Comm'rs,* 134 Kan. 781, 782, 8 P. 2d 312), and therefore could not be recovered by the taxpayer, even though illegally collected.

The judgment of the trial court is reversed.