595 P.2d 309

**Eugene KOPP and Venita Beglan, Plaintiffs-Appellants,**

v.

**The STATE of Idaho (Department of Law Enforcement), the City of Twin Falls, Idaho, L. James Koutnik, d/b/a The Sandpiper, the County of Twin Falls, Idaho, and John Does 1 through 4, Defendants-Respondents,**

v.

**RAPON INVESTMENTS INCORPORATED, an Idaho Corporation, Defendant-Intervenor-Respondent.**

No. 12674.

Supreme Court of Idaho.

May 23, 1979.

William C. Roden, Boise, for plaintiffs-appellants.

Wayne Kidwell, Atty. Gen., Jay F. Bates, Sp. Asst. Atty. Gen., William L. Mauk, Boise, for defendants-respondents.

McFADDEN, Justice.

This appeal challenges a district court judgment upholding the issuance of a 16th retail liquor license for use in the city and county of Twin Falls, Idaho. The principal issue raised is whether the state liquor license in question was issued in accordance with the legal requisites of I.C. § 23–903. Since our resolution of this issue is dispositive, other issues raised by the parties will not be discussed.

The facts of this case are uncontroverted. I.C. § 23–903 limits the number of retail liquor licenses that can be issued. It provides in relevant part as follows:

License to retail liquor.—The director of the department of law enforcement is hereby empowered, authorized, and directed to issue licenses to qualified applicants, as herein provided, whereby the licensee shall be authorized and permitted to sell liquor by the drink at retail and,

upon the issuance of such license, the licensee therein named shall be authorized to sell liquor at retail by the drink, but only in accordance with the rules and regulations promulgated by the director and the provisions of this act. No license shall be issued for the sale of liquor on any premises outside the incorporated limits of any city except as provided in this act and *the number of licenses so issued for any city shall not exceed one (1) license for each one thousand five hundred (1,500) of population of said city or fraction thereof, as established in the last preceding census, or any subsequent special census conducted by the United States bureau of the census* . . . .

(Emphasis added.)

On November 15, 1976, the State Department of Law Enforcement issued a 16th retail liquor license for use in the city and county of Twin Falls to defendant-respondent L. James Koutnik. This license was issued on the basis of a 1973 population figure for the City of Twin Falls, prepared by the United States Bureau of the Census pursuant to 13 U.S.C. § 181 (1954).[1] Mr. Jean Milar, the City manager of Twin Falls, obtained the 1973 population figure from a document entitled "Population Estimates and Projections" which was prepared by the United States Bureau of the Census for revenue-sharing purposes. The document indicates that the population of the City of Twin Falls increased by 1,702 people between April 1, 1970 and July 1, 1973.

Plaintiffs-appellants Venita Beglan and Eugene Kopp are residents of the city and county of Twin Falls, Idaho. On November 23, 1976, they filed a complaint in district court alleging that the issuance of a 16th liquor license for the city of Twin Falls violated I.C. § 23–903 because it was not based upon a census conducted by the United States Bureau of the Census. Appel-

lants' amended complaint asked the district court to revoke the state liquor license issued to respondent Koutnik and to enjoin the State Department of Law Enforcement from reissuing the same until a proper determination of census was made.[2]

After a full hearing, the district court concluded that the issuance of a state liquor license to L. James Koutnik was supported by census figures provided by the United States Bureau of the Census, and such issuance and the use and operation thereunder was legally permissible pursuant to I.C. § 23–903. Judgment was entered in favor of respondents and this appeal followed.

This is the first time this court has been called upon to interpret that portion of I.C. § 23–903 which limits the number of available liquor licenses according to population. The statutory language in question reads:

. . . the number of licenses so issued for any city shall not exceed one (1) license for each one thousand five hundred (1,500) of population of said city or fraction thereof, *as established in the last preceding census, or any subsequent special census conducted by the United States bureau of the census* . . . .

I.C. § 23–903 (Emphasis added.)

Appellants claim the above language requires retail liquor licenses to be issued on the basis of a federal decennial census or a federal "special census" as that term is defined in 13 U.S.C. § 196 (1976). That statute provides in relevant part as follows:

The Secretary may conduct special censuses for the government of any State, or of any county, city, or other political subdivision within a State, . . . upon payment to the Secretary of the actual or estimated cost of each such special census. The results of each such special census shall be designated "Official Cen-

---

1. 13 U.S.C. § 181 (1954) states:

   The Secretary may make surveys deemed necessary to furnish annual and other interim current data on the subjects covered by the censuses provided for in this title.

2. Appellants also asked the court to enjoin the issuance of city and county liquor licenses to

respondent Koutnik and to revoke any such license that had already been issued. By stipulation, the city and county of Twin Falls waived formal appearance and participation in this suit, agreeing that the validity of the licenses which they issued respondent Koutnik will depend on the validity of the State liquor license.

sus Statistics". These statistics may be used in the manner provided by applicable law. 13 U.S.C. § 196 (1976). Respondents, on the other hand, contend that the Department of Law Enforcement's interpretation of I.C. § 23–903 is correct. According to the Department of Law Enforcement, the legislative intent of I.C. § 23–903 was to allow retail liquor licenses to be issued on the basis of current population data from the United States Bureau of the Census, whether it be decennial, biennial or annual. Under the Department's interpretation of I.C. § 23–903, municipal population can be established by reference to an official report prepared under the authority of the Secretary of Commerce, United States Bureau of the Census, and so certified.

█ It is the general rule that an agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action. *Oklahoma Real Estate Commission v. National Business & Property Exchange,* 238 F.2d 606, 610 (10th Cir. 1956); *Clark County School District v. Local Government Employee Management Relations Board,* 90 Nev. 442, 530 P.2d 114 (1974); *Washington Township of Nemaha County v. Hart,* 168 Kan. 650, 215 P.2d 180 (1950); *Bodinson Manufacturing Co. v. California Employment Comm'n,* 17 Cal.2d 321, 109 P.2d 935 (1941). The Department of Law Enforcement is responsible for administering and enforcing Idaho's Retail Sale of Liquor by the Drink Act, I.C. §§ 23–901—23–949. I.C. § 23–932 gives the director of the Department broad powers to carry out the provisions of the Act, including the power to prescribe "the proof to be furnished and the conditions to be observed in the issuance of licenses . . . ."

█ The construction given a statute by the executive and administrative officers of the State is entitled to great weight and will be followed by the Court unless there are cogent reasons for holding otherwise. *McCall v. Potlatch Forests,* 69 Idaho 410, 413, 208 P.2d 799 (1949); *Idaho Public Utilities Comm'n v. V–1 Oil Co.,* 90 Idaho 415, 412 P.2d 581 (1966); *Breckenridge v. Johnston,* 62 Idaho 121, 108 P.2d 833 (1940); *Ada County v. Bottolfsen,* 61 Idaho 363, 102 P.2d 287 (1940). As indicated above, the Department of Law Enforcement has interpreted I.C. § 23–903 to mean that for the purpose of issuing retail liquor licenses, municipal population can be established by a certified official report of population prepared under the authority of the Secretary of Commerce, United States Bureau of the Census. Mr. Richard L. Cade, Chief of the Bureau of Liquor Law Investigation, Department of Law Enforcement, testified that the Department has issued approximately a dozen retail liquor licenses on the basis of this interpretation. Mr. Cade also testified that he relied upon the Department's interpretation of I.C. § 23–903 when he issued respondent L. James Koutnik a retail liquor license on the basis of a 1973 population figure for the City of Twin Falls, established by the United States Bureau of the Census for revenue sharing purposes pursuant to 13 U.S.C. § 181 (1954).

The Department of Law Enforcement's interpretation of I.C. § 23–903 is supported by the legislative history of the Retail Sale of Liquor by the Drink Act. Enacted by the Idaho legislature in 1947, the Act authorized the retail sale of liquor by the drink within the incorporated limits of any city or village. Originally, the Act did not limit the number of available licenses according to population. However, the Act did provide that license fees would be based upon a municipality's population, as determined by "The census taken under the direction of the Congress of the United States in the year 1940 and every ten years thereafter . . . ." unless the State of Idaho makes a direct enumeration of the inhabitants thereof. (1947, ch. 274 § 4g, p. 874.) Section 4g, which was subsequently codified as I.C. § 23–904, was amended in 1959 to read "The census taken under the direction of the congress of the United States in the year 1950 and every ten (10) years thereafter . . . ." I.C. § 23–904, am. 1959, ch. 118 § 2, p. 255. That same year, the Idaho legislature amended I.C. § 23–903 to limit

the number of available liquor licenses according to population. However, instead of using the above quoted language from I.C. § 23–904, which clearly refers to the federal decennial census, the legislature stated that:

> . . . the number of licenses so issued for any city or village shall not exceed one license for each 1,500 of population . . . *as established in the last preceding census,* . . .

I.C. § 23–903, am. 1959, ch. 118 § 1, p. 254 (emphasis added). In 1963 the above provision was amended so that it now reads:

> . . . the number of licenses so issued for any city or village shall not exceed one license for each 1,500 of population . . . as established in the last preceding census, *or any subsequent special census conducted by the United States Bureau of the Census,* . . .

I.C. § 23–903, am. 1963, ch. 215 § 1, p. 622.

■ Where a statute with respect to one subject contains a certain provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed. *General Electric Co. v. Southern Construction Co.,* 5 Cir., 383 F.2d 135, cert. den. 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (5th Cir. 1967); *City of Port Hueneme v. City of Oxnard,* 52 Cal.2d 385, 341 P.2d 318 (1959); *Richfield Oil Corp. v. Crawford,* 39 Cal.2d 729, 249 P.2d 600 (1952); *State v. Welkos,* 14 Wis.2d 186, 109 N.W.2d 889 (1961); 82 C.J.S. Statutes § 366b. We think it significant that the legislature did not use the language from I.C. § 23–904 when it stated the basis for establishing population under I.C. § 23–903. Since both I.C. § 23–903 and I.C. § 23–904 were amended in 1959, it is difficult to believe that the legislature would use different language if it intended municipal population to be established by the federal decennial census under both statutes. If the legislature intended population to be established by the federal decennial census under I.C. § 23–903, it could have said so, as it did in I.C. § 23–904.

■ Moreover, appellants' contention that I.C. § 23–903 requires population to be established by a federal decennial census or a "special census" as that term is defined in 13 U.S.C. § 196 (1976) fails to take into account the dates the relevant statutes were enacted and amended. As noted above, from 1959 to 1963 the relevant language from I.C. § 23–903 stated: "as established in the last preceding census, . . ." The words "or any subsequent special census conducted by the United States Bureau of the Census" were added by way of amendment in 1963. 13 U.S.C. § 196 (1976), which provides for and defines special censuses, was not enacted by the United States Congress until October 17, 1976. (Pub.L. 94–521, § 11(a), Oct. 17, 1976, 90 Stat. 2464.) Consequently, the Idaho legislature could not have intended the term "special census" in I.C. § 23–903 to be restricted to the federal definition of special census in 13 U.S.C. § 196 (1976). Prior to 1976, federal law did not expressly provide for, or define, special censuses. However, since 1929 the Director of the Census has been authorized to furnish transcripts of tables and other census records, and to make special statistical compilations and surveys for State or local officials upon the payment of the actual or estimated cost of such work. 13 U.S.C. § 8(b) (1954) (formerly section 218 this title). The only logical conclusion is that the Idaho legislature was referring to these "surveys" and "special statistical compilations" when it amended I.C. § 23–903 to allow population to be established by a "special census conducted by the United States Bureau of the Census." The fact that the legislature characterized such surveys and compilations as a "census" further suggests that the legislature intended current population data from the United States Bureau of the Census to satisfy the requirements of I.C. § 23–903.

This court is of the opinion that the Department of Law Enforcement's interpretation of I.C. § 23–903 is correct. The district court judgment is affirmed.

SHEPARD, C. J., and DONALDSON and BISTLINE, JJ., concur.

BAKES, Justice, dissenting:

I dissent from the majority's conclusion that a population estimate approved by the United States Bureau of Census for use in administering various federal programs is the "special census" to which the Idaho legislature referred in I.C. § 23–903. A brief review of the ordinary meaning of "census," the state of the law at the time the term "special census" was added to the Idaho statute, and the federal statutory provisions make apparent the error in the majority's reasoning.

The word "census" is derived from the Latin word "censere," meaning to count or to reckon, and in the Roman language historically meant "a numbering of the people." 14 Am.Jur.2d, Census § 1 (1964). In modern times courts have ruled that "census" refers to "an official enumeration of the population or inhabitants" of an area, 14 Am.Jur.2d, supra; "the singly counting up of the population [or] an official counting of heads," State ex rel. Morrison v. Nabours, 79 Ariz. 240, 286 P.2d 752, 756 (1955); "a finding of the population and not an estimate," State ex rel. Reynolds v. Jost, 265 Mo. 51, 175 S.W. 591, 597 (1915); and "not merely a sum total, but an official list, containing the names of all inhabitants," City of Huntington v. Cast, 149 Ind. 255, 48 N.E. 1025, 1026 (1898). See City of Bisbee v. Williams, 83 Ariz. 141, 317 P.2d 567 (1957). Although the Idaho act at issue in this case does not specifically define "census", the act does provide that the words used "shall be given the ordinary and commonly understood and accepted meaning." I.C. § 23–902. The ordinary and accepted meaning of "census" is an official enumeration of the population and does not refer to a mere population estimate or projection. See Webster's Third New International Dictionary (1971).

Moreover, courts have commonly interpreted the term "census" to mean the United States decennial census, particularly where that is the only census regularly taken in a state. 14 Am.Jur.2d, supra. When the phrase "as established in the last preceding census" in I.C. § 23–903 is read together with the provision in I.C. § 23–904 that liquor license fees be based on the "census taken under the direction of the congress of the United States in the year 1950 and every ten (10) years thereafter," it is obvious that in I.C. § 23–903 the legislature was referring to the regular decennial census conducted by the federal government.

At the time I.C. § 23–903 was amended in 1963 to include "any subsequent special census conducted by the United States Bureau of the Census," 1963 Idaho Sess.Laws, ch. 215, § 1 at 622, the regular decennial censuses were not the only censuses taken by the United States Bureau of Census. In addition to the decennial census the Bureau of Census was also conducting "special censuses." The special censuses were generally an interim census taken of a particular municipality or political subdivision by the United States Bureau of Census but at the expense and request of that municipality or political subdivision. See 28 Fed.Register 120 (Jan. 4, 1963); 14 Am.Jur.2d, supra, § 2; City of Compton v. Adams, 33 Cal.2d 596, 203 P.2d 745 (1949). These special censuses were apparently taken by a house to house canvas in a manner similar to that employed in taking a decennial census. City of Compton v. Adams, supra.

The majority opinion's observation that 13 U.S.C. § 196, which provides for and defines special censuses, was enacted in 1976, subsequent to the 1963 amendment of I.C. § 23–903 adding the term "special census" to Idaho law is correct. However, the majority's suggestion that the term "special census" in I.C. § 23–903 therefore could not have referred to the same thing as the term "special census" in 13 U.S.C. § 196 is simply incorrect. Although § 196 was enacted in 1976, the congressional reports on that legislation make it clear that the provision for special censuses did not create a new type of census but merely made the law conform to existing practices. See S.Rep.No.94–1256, § 11, reprinted in 1976 U.S.Code Cong. & Admin.News, pp. 5463, 5468–69; H.R. Conf.Rep.No.94–1719, at 13–14, reprinted in 1976 U.S.Code Cong. & Admin.News, pp.

**166**

5476, 5481. For example, on January 4, 1963, the Bureau of Census published a regulation specifying the conditions under which it would conduct a "special population census" for state and local governmental bodies. 28 Fed.Reg. 120 (Jan. 4, 1963). In *City of Compton v. Adams, supra,* the California Supreme Court considered a "special census" conducted in 1948 by the United States Bureau of Census of the City of Compton at the request and expense of that city. Moreover, the California court's opinion, which was released in 1949, states "that for many years the Bureau of the Census has taken special censuses of various regional areas." 203 P.2d at 746. In sum, the majority's suggestion that the Bureau of Census had not been conducting "special censuses" at the time the legislature amended I.C. § 23–903 in 1963 is historically incorrect.

However, the fact that the Bureau of Census was in fact conducting special censuses did create certain problems under various state statutes which provided that the latest federal census would be the basis for certain governmental regulations or activities. Idaho's liquor licensing statute prior to the 1963 amendment was typical of that problem. Some courts had ruled that such statutory provisions were not satisfied by a special census taken of a limited geographical area. *See Sproul v. State ex rel. Smith,* 153 Fla. 892, 16 So.2d 109 (1944) (liquor license granted according to county population); *Harp v. Abrahamson,* 248 Iowa 222, 80 N.W.2d 505 (1957) (apportionment of road use tax funds according to municipal population). Other courts had ruled that such statutes referred to either the regular decennial census or a special census. *See Bisbee v. Williams, supra* (sales tax apportioned according to municipal population); *Compton v. Adams, supra* (establishment of municipal court); 14 Am.Jur.2d *supra,* § 6. It was in those circumstances, with the Bureau of Census taking special censuses of limited geographical areas and the various state courts differing in the effect to be given those special censuses, that the Idaho legislature amended I.C. § 23–903 in 1963 to include "subsequent special census conduct-ed by the United States Bureau of the Census . . . ." The legislative intent of that amendment should be obvious: the legislature intended to make clear that the issuance of a liquor license could be based upon either a regular decennial census or a special census conducted by the Bureau of Census. However, there is nothing in the legislative history of I.C. § 23–903 to indicate that the legislature ever intended to abandon the original concept of basing the issuance of liquor licenses on an actual census in favor of basing the issuance on a mere estimate or projection of the population.

The majority opinion concludes that any population estimate or projection approved by the United States Bureau of Census may be relied upon in issuing liquor licenses pursuant to I.C. § 23–903. In doing so, however, the majority not only misinterprets Idaho statutes but misapprehends the significance of the federal statutes. Although current federal statutes require the Bureau of Census to produce and publish "current data on total population and population characteristics" annually for some governmental units and biennially for others, 13 U.S.C. § 181(a), Congress had never equated those population estimates and projections with a census, either the decennial census or a special census. 13 U.S.C. § 183(b) provides that such "current data on total population" is not to be applied "to any law of the United States which, for purposes of determining the amount of benefit received by State, county, or local units of general purpose government, provides that only population or population characteristics data obtained in the most recent decennial census may be used in such determination." Although Congress requires in § 181 the Bureau of Census to produce and publish current population data, Congress nevertheless continued to insist in § 141(a) that the Bureau of Census conduct a regular decennial census, and in § 196 to conduct special censuses at the request and expense of state and local governmental units. In short, the population estimates and projections published by the United States Bureau of Cen-

sus pursuant to 13 U.S.C. § 181 are not the equivalent under federal law of a census, either decennial or special, and I find no indication that the Idaho legislature ever intended that the issuance of liquor licenses pursuant to I.C. § 23–903 be based on such estimates rather than an official census.

Regarding the majority's reliance on the rule that administrative construction of a statute is entitled to weight in determining its meaning, this Court stated in *Ware v. Idaho State Tax Commission,* 98 Idaho 477, 481, 567 P.2d 423, 427 (1977) that, "Whether or not an administrative construction of legislative language is correct is ultimately a question for judicial decision, especially where, as here, the language is devoid of any ambiguity." Here, there is no ambiguity in the requirement that the number of licenses issued shall be on a population basis based upon "the last preceding census, or any subsequent special census . . . ." Therefore, this Court should do as we did in *Ware* and follow the express wording of the statute.

I conclude therefore that the license at issue in this case was improperly issued and that the judgment of the district court must be reversed.