30 P.3d 958

Beatrice ALMGREN; Donald J. Beck and Karen L. Beck, husband and wife; and Jack W. Simpson and Virginia S. Simpson, husband and wife, Petitioners–Appellants,

v.

IDAHO DEPARTMENT OF LANDS; Stanley F. Hamilton, in his capacity as Director of the Idaho Department of Lands; and W.R. Pitman, PE, in his capacity as Administrator of the Idaho Lake Protection Act for the Idaho Department of Lands, Respondents–Respondents on Appeal,

and

City of Coeur d'Alene, Idaho, Intervenor–Respondent.

No. 25747.

Supreme Court of Idaho, Coeur d'Alene, April 2001 Term.

July 27, 2001.  .

John F. Magnuson, Coeur d'Alene, for appellants.

Hon. Alan G. Lance, Attorney General, Boise, for respondents.  Steven J. Schuster argued.

Scott W. Reed, Coeur d'Alene, for intervenor-respondent.

KIDWELL, J.

The petitioners-appellants in this case applied for three separate permits to build docks from their property into Lake Coeur d'Alene.  The Idaho Department of Lands (the Department) declined to process the applications, prompting the petitioners to seek a writ of mandate from the district court.  The district court denied the writ, holding that the Department had properly acted by not processing the applications.  We agree.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The petitioners in this case all own property in the City of Coeur d'Alene which fronts Lake Coeur d'Alene. Each of the petitioners applied for a noncommercial navigational encroachment permit to allow them to build private boat docks on Lake Coeur d'Alene.

The Almgren's application, dated September 28, 1998, indicated that the proposed boat dock would not be closer than forty feet from the adjacent property owners. The Simpson's application, also dated September 28, 1998, indicated that their proposed boat dock would not be closer than one hundred feet from their adjacent property owners. The Beck's application, dated August 24, 1998, indicated that their proposed dock would be more than twenty-seven feet from their adjacent property owners. Each of the applications was accompanied by the requisite $ 50.00 filing fee.

In October of 1998, the Department returned the application fees to the petitioners, and informed them that the applications were not being processed "[d]ue to legal events...." The legal events indicated by the Department, referred to the pending appeal in the case of *Dupont v. Idaho State Bd. of Land Comm'rs,* 134 Idaho 618, 7 P.3d 1095 (2000). The *Dupont* case involved a similar application for a boat dock by Dupont, who was an adjacent property owner to the Becks. Because the issue in *Dupont* was the same as that in the case of the other petitioners, the Department decided to hold the applications until the *Dupont* case was resolved.

On January 6, 1999, the petitioners filed a petition with the district court, seeking a writ of mandate to compel the Department to issue the permits. The petitioners relied on certain provisions of the Idaho Code which require the Department to act within a specific period of time. The petitioners claimed that the Department failed to act because it decided to hold the applications pending the *Dupont* appeal.

On March 10, 1999, the City of Coeur d'Alene moved to intervene in the action. The City's motion was granted on April 22, 1999.

The district court held a hearing "in the nature of cross-motions for summary judgment," on May 26, 1999. On June 17, 1999, the district court released its memorandum order, denying the petitioner's request for a writ of mandate. In its decision, the court held that the Department had acted by determining to hold the applications pending the outcome of the *Dupont* appeal.

The appellants now appeal the decision of the district court.

## II.

## STANDARD OF REVIEW

The standard of review for an appellate court's review of a district court's failure to issue a writ of mandate is the same standard required of the district court. *Brady v. City of Homedale,* 130 Idaho 569, 571, 944 P.2d 704, 706 (1997). The party seeking a writ of mandate must establish a "clear legal right to the relief sought." *Id.* Additionally, the writ will not issue where the petitioner has a "plain, speedy and adequate remedy in the ordinary course of law." I.C. § 7–303.

## III.

## ANALYSIS

A. The District Court Correctly Concluded That The Department "Acted" Under I.C. § 58–1305(f) When It Decided To Hold Appellants' Applications Pending The Outcome Of The *Dupont* Appeal.

The appellants assert that the district court was required to issue a writ of mandate ordering the Department to issue them non-commercial navigational encroachment permits because the Department's failure to act on the appellants' applications triggered the automatic approval provision contained in I.C. § 58–1305(f).

Idaho Code section 58–1305 addresses the application process for non-commercial navigational encroachments. It provides:

(a) Applications for construction, enlargement or replacement of navigational encroachments not extending beyond the line of navigability nor intended primarily

for commercial use shall be processed by the board with a minimum of procedural requirements and shall not be denied nor appearance required except in the most unusual of circumstances or if the proposed encroachment infringes upon or it appears it may infringe upon the riparian or littoral rights of an adjacent property owner.

(b) If the plans of the proposed encroachment indicate such infringement will or may occur, the board shall require that the applicant secure the consent of such adjacent owner or that he be given notice of the application by personal service or by certified or registered mail, return receipt requested, directed to him at his usual place of address, which, if not otherwise known, shall be the address shown on the records of the county treasurer or assessor, and such adjacent owner shall have ten (10) days from date of personal service or receipt of certified or registered mail to file objection with the board. The application itself shall be deemed sufficient notice if the adjacent owner is the state of Idaho.

(c) In the event objection to the application is filed by an adjacent owner or if the board deems it advisable because of the existence of unusual circumstances, the board shall fix a time, no later than sixty (60) days from the date of filing application, and a place, for affording the applicant and the adjacent owner filing objection to appear and present evidence in support of or in opposition to the application and within forty-five (45) days thereafter shall render a decision and give notice thereof to the parties concerned who may thereafter resort to appellate procedures prescribed in section 58-147, Idaho Code.

(d) A permit shall not be required for repair of an existing navigational encroachment.

(e) Applications submitted under this section shall be upon forms to be furnished by the board and shall be accompanied by plans of the proposed navigational encroachment containing information required by section 58-143(k), Idaho Code, and such other information as the board may by rule or regulation require in conformance with the intent and purpose of this chapter.

(f) If notice to an adjacent owner is not required or if the adjacent owner has consented to the proposed encroachment or has failed to file objection to the proposed encroachment within the time allowed following service of notice, *the board shall act upon the application as expeditiously as possible but no later than sixty (60) days from receipt of the application and failure to act within such time shall constitute approval of the application.*

I.C. § 58-1305 (emphasis added).

■ The appellants point to the emphasized language in subsection (f), claiming that the Department did not act, and thus, their applications were automatically approved. The Department claims that it did act within the required sixty days, when it decided to hold the applications pending the resolution of the *Dupont* appeal.

To resolve this appeal, the Court must first determine whether the Department "acted" within the meaning of I.C. § 58-1305(f). If the Court determines that the Department did not act, it may then move to the second issue regarding the writ of mandate. If, on the other hand, the Court determines that the Department did act, it must then consider whether the Department's action was appropriate under the guidelines of the statute.

In support of its contention that it did act within the statutory period of time, the Department points out that it notified the petitioners both verbally and in writing that it had decided to hold their applications pending the outcome of the *Dupont* appeal. While the Department acknowledges that this was not the action desired by the appellants, it nevertheless did constitute an action by the Department on the applications. Additionally, the Department acted by returning the application fees to each of the appellants.

Subsection (f) does not require the Department to render a decision within sixty days; rather, it only requires the Department to "act" within sixty days to avoid the automatic approval provision. By contrast, subsection (c) specifically requires the Department to "render a decision and give notice thereof to the parties concerned ...." within forty-five days of the hearing. I.C. § 58-1305(c).

Thus, since subsection (f) only requires action and does not specifically require a decision, this Court holds that the Department did act by deciding to hold the applications and return the application fees. *See Kopp v. State,* 100 Idaho 160, 164, 595 P.2d 309, 313 (1979) ("Where a statute with respect to one subject contains a certain provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed.").

Although the Department did act within the requisite period of time, thus avoiding the automatic approval provision, this Court must still determine whether the action taken by the Department was within the authority granted to it by the statute.

The Department claims that it acted appropriately by choosing to hold the applications until the *Dupont* case was decided. In support of its argument the Department points out that certain cases from the Court of Appeals have recognized that courts are given the discretion to determine the appropriateness of proceeding with an action when there is a similar case pending in a different court. *See Zaleha v. Rosholt, Robertson & Tucker, Chtd.,* 129 Idaho 532, 533, 927 P.2d 925, 926 (Ct.App.1996); *Diet Center, Inc. v. Basford,* 124 Idaho 20, 22, 855 P.2d 481, 483 (Ct.App.1993). The Department urges this Court to expand the rule in this narrow factual situation in order to allow it to hold the applications pending the outcome of the *Dupont* appeal.

While it would be difficult to fault the Department for deciding to hold the applications pending a decision in the *Dupont* case, it is debatable whether the statute does provide the Department with that option. The statute is rather specific about the time requirements placed on applications for non-commercial navigational encroachments. Subsection (c) provides that in the absence of objections to the encroachment application, "if the board deems it advisable because of the existence of unusual circumstances, the board shall fix a time, no later than sixty (60) days from the date of filing the application ..." to hold a hearing in order to provide a time and place for "the applicant and the adjacent owner ... to appear and present evidence in support of or in opposition to the

application...." I.C. § 58–1305(c). Clearly, the Department did not follow the time requirements provided in the statute.

It is significant in this appeal that the Court has taken judicial notice of the record in the recent case of *Dupont,* 134 Idaho at 618, 7 P.3d at 1095. Dupont owned 158 feet of littoral property on the shores of Lake Coeur d'Alene and was an immediate neighbor of appellant Beck in this appeal. Central to the current appeal was the Court's determination that the Board of Land Commissioners properly revoked Dupont's permit to build a boat dock because the proximity of the designated swimming area presented "unusual circumstances." *Id.* at 625, 7 P.3d at 1102. Additionally, the Court held, "It makes little sense for the Board to grant a permit for an encroachment when the intended use of the encroachment would violate applicable local and state laws." *Id.*

Now that the *Dupont* appeal has been decided we find the appropriate course of action is for the Department to process the applications according to the terms of Idaho Code section 58–1305, and in a manner consistent with the *Dupont* decision.

**B.  The District Court Did Not Err In Holding That Appellants Were Not Entitled To A Writ Of Mandate Because They Had An Adequate Remedy At Law.**

■ A party seeking a writ of mandate must establish a "clear legal right to the relief sought." *Brady,* 130 Idaho at 571, 944 P.2d at 706. Additionally, the writ will not issue where the petitioner has a "plain, speedy and adequate remedy in the ordinary course of law." I.C. § 7–303. "A writ of mandamus will lie if the officer against whom the writ is brought has a clear legal duty to perform and if the desired act sought to be compelled is ministerial or executive in nature, and does not require the exercise of discretion." *Cowles Pub. Co. v. Magistrate Court,* 118 Idaho 753, 760, 800 P.2d 640, 647 (1990).

Here, the appellants claim that they are entitled to a writ of mandate directing the Director of the Idaho Department of Lands to issue the non-commercial navigational en-

croachment permits. On appeal, they claim that since the Department failed to act within sixty days, Idaho Code section 58–1305(f) requires the Director to grant them the permits. This statute, argue the appellants, removes any discretion from the Director, and requires a purely ministerial act. Appellants argue, "While the initial determination as to whether or not the most unusual circumstances exists may in fact be a discretionary act, it is not an open-ended discretionary act," and "it is quite clear that if the Department fails to exercise its discretion within the sixty (60) day period after the application is filed, then the Department's duties become *ministerial* in nature."

The problem with the appellants' claim is that the automatic approval provision contained in subsection (f) has not been properly invoked. As discussed above, the question is presented whether the Department did act within the requisite time period. It determined that it should "hold" the applications pending the resolution of the *Dupont* appeal, and it determined to return the application fees to the appellants. The Department had the discretion to determine whether "unusual circumstances" existed and how to properly proceed in light of the pending *Dupont* appeal. Therefore, since the automatic approval portion of subsection (f) was not invoked, the district court correctly determined that the appellants did not "have a clear legal right to the relief sought." In other words, since the Department did act within the required sixty days, the automatic approval provision in subsection (f) has not been invoked, and thus, there is no legal basis upon which a writ of mandate could be granted.

 While the Department clearly did act upon the applications, it is an issue whether the Department acted properly within the guidance of I.C. § 58–1305. The statute provides that in the "most unusual of circumstances," the proper remedy is for the Department to hold a hearing on the applications. The existence of the *Dupont* appeal created "unusual circumstances" surrounding the appellants' applications. However, the statute provides that in unusual circumstances, the Department shall hold a hearing to allow both sides an opportunity to present evidence.

## VI.

## CONCLUSION

This Court holds that the automatic approval provision was not invoked in this case because the Department did act by its decision to hold the applications pending the *Dupont* appeal. No attorney fees are awarded on appeal, costs to respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN, CONCUR.