ALECK E. ELLIS v. VILLAGE OF BLOOMINGTON, INC. JOHN R. BRIDELL, INTERVENER.[1]

July 15, 1955.

No. 36,652.

---

[1]Reported in 72 N. W. (2d) 350.

*John O. Erickson,* for appellant.

*Kempf & Ticen,* for defendant-respondent.

*Herbert H. Willcox,* for intervener-respondent.

THOMAS GALLAGHER, JUSTICE.

Action under M. S. A. c. 555 for a declaratory judgment determining that ordinance No. 59 of the village of Bloomington, approved December 28, 1954, and entitled "An Ordinance Establishing a

Municipal Liquor Dispensary" is invalid. After interposition of the answer of the village, a stipulation of facts was executed by the parties wherein it was agreed:

That the Village of Bloomington is a municipal corporation organized and existing under the laws of the state of Minnesota, incorporated April 8, 1953; that prior to that date the identical area now within its limits was an organized town known as the Town of Bloomington; that the federal census of 1950 showed said town had a population of 9,902 persons.

That the census required by state laws for incorporation purposes established a population of 12,643 inhabitants within such limits as of April 8, 1953.

That pursuant to Minnesota statutes controlling apportionment to cigarette and liquor taxes the state auditor has at all times apportioned such taxes to the village on the basis of the incorporation rather than the federal census.

That on December 28, 1954, preparatory to establishing and operating a municipal liquor dispensary, the village adopted ordinance No. 59 entitled "An Ordinance Establishing a Municipal Liquor Dispensary."

That plaintiff, Aleck E. Ellis, is a resident taxpayer of the village and operates a restaurant therein known as "Smoky Point"; that upon council approval he would be eligible for a license to sell intoxicating liquors within the village in the event private licenses for such purposes were authorized.

Subsequently, John R. Bridell, individually and on behalf of the taxpayers of the village, intervened in the action in support of the validity of the ordinance. Shortly thereafter, on the pleadings and stipulation of facts described, plaintiff and the village each moved for summary judgment under Rule 56.01 of Rules of Civil Procedure, the intervener joining the village in its motion. On March 16, 1955, the trial court made findings and ordered summary judgment upholding the validity of the ordinance. This is an appeal from such judgment.

The ordinance provides for the establishment of a municipally owned "off sale" liquor dispensary effective April 8, 1955,[2] and it is agreed by all parties that its validity is dependent upon construction of M. S. A. 340.11, subd. 10, which authorizes the establishment of municipally owned "On sale" or "Off sale" liquor dispensaries *in villages of not more than 10,000 inhabitants.* This section provides:

" 'On sale' licenses may be issued for the sale of intoxicating liquors in hotels, clubs, restaurants and establishments for the sale of 'On sale' liquors exclusively in cities of the first, second, and third class and *villages of over 10,000 inhabitants,* * * *. Such licenses may be issued in cities of the fourth class, and *other villages* and boroughs for such sale of intoxicating liquor in hotels, clubs or exclusive liquor stores, which exclusive liquor stores the governing body of such municipalities may establish or permit to be established for dispensation of liquor either 'On sale' or 'Off sale,' or both." (Italics supplied.)

Under § 340.353, provision is made for continuance of such municipally owned dispensaries after the "effective date of the census by which such municipality exceeds 10,000 in population" provided that, within one year therefrom, a majority of the voters therein at a general or special election shall have voted in favor of such continuance.

Section 412.011, subd. 2, the census provisions of which had their origin in enactments existing long prior to § 340.11, subd. 10, requires a new census showing residential buildings and number of inhabitants within an area proposed to be incorporated as a village as a basis for such incorporation. It is further provided therein that such census be attached to the petition for incorporation with a verification of the census takers declaring the truth and accuracy of the census and setting forth the dates upon which it was taken. Such a census was taken here and, as indicated above, revealed that as of the date of incorporation the village would commence its existence as a corporate entity with a population of 12,643.

[2] Section 340.11, subd. 15, prohibits operation of municipally owned liquor dispensaries "until the expiration of two years from the date of incorporation."

Defendant village asserts that, because of the absence of any definition of the terms "population" or "inhabitants" as used in the liquor control act (§§ 340.07 to 340.40), the definition of such terms set forth in § 645.44, subd. 8, must be applied; and that thereunder the township's population of 9,902 inhabitants disclosed by the 1950 federal census would authorize the new village to establish a municipal liquor dispensary notwithstanding that its incorporation census taken in compliance with the provisions of § 412.011, subd. 2, established its population at 12,643 inhabitants, or 2,643 inhabitants in excess of the 10,000 limitation specified in § 340.11, subd. 10. Section 645.44, subd. 8, provides:

"The following words, terms, and phrases used in Minnesota Statutes * * * shall have the meanings given them in this section, *unless another intention clearly appears.*

\* \* \* \* \*

"Subd. 8. When used in reference to population, 'population' and 'inhabitants' mean that shown by the last preceding census, state or United States, *unless otherwise expressly provided."* (Italics supplied.)

Plaintiff contends that, since there is no requirement in § 340.11, subd. 10, that the last federal census is to govern its application to villages formed in an interim between two decennial federal censuses[3] and since there is a *statutory requirement* (§ 412.011, subd. 2) for a special census of such villages at the time of their incorporation, it was *intended* that until the next state or federal census the latter should govern their classifications.

■ Our primary function here, of course, is to ascertain and give effect to the legislative intent with reference to the establishment of municipally owned liquor stores. That the legislature intended to limit such stores to cities of the fourth class and to villages of not more than 10,000 population is clear from the language of § 340.11, subd. 10, and from our decision in Arens v. Village of Rogers, 240

---

[3] The state of Minnesota has not taken a census since 1905, so that in construing the statutory provision in question, reference need not be made thereto.

Minn. 386, 397, 61 N. W. (2d) 508, 516, appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096, where it was stated:

"* * * Our task is not to appraise the desirability of what the legislature has done nor to decide what classification, if any, is the best, but is rather to determine whether there is any reasonable basis or justification for the classification adopted by the legislature. We are of the opinion that such a basis exists here. The legislature might reasonably have determined that facilities of the larger municipalities for policing private liquor establishments were likely to be more adequate than those of the smaller communities. As we recently stated in Cleveland v. County of Rice, 238 Minn. 180, 186, 56 N. W. (2d) 641, 645:

" '* * * In the case of liquor regulations, classification of areas on the basis of the amount of police supervision in the areas is common.'

"Furthermore, the legislature might also have concluded that municipal ownership is more feasible where the number of outlets is small and that, therefore, the privilege should not be extended to the large cities where many establishments would have to be operated. The legislature is not bound to cure all evil at once but rather may deal with it where it is practical to do so. Eldred v. Div. of Employment and Security, 209 Minn. 58, 295 N. W. 412."

■ As indicated, there is no dispute that the present village of Bloomington exceeds in population the 10,000 figure specified as the line of demarcation beyond which municipally owned liquor dispensaries are unauthorized except in the limited situations covered by § 340.353. Its population of 12,643 inhabitants was definitely established at the time of its incorporation, and it is not disputed that today it has a population almost double the incorporation figure. Clearly, if effect is to be given to the express intent of the legislature, such population disqualifies it from establishing a municipal liquor dispensary. But the village seeks to circumvent this legislative restriction by resorting to the 1950 federal census of the township of Bloomington, comprising the same area as the newly formed village, relying upon § 645.44, subd. 8, in support of its position. Section

645.44, however, provides that the terms defined therein are to have the meanings given *unless another intent clearly appears;* and subd. 8 thereof, defining "population" and "inhabitants," is made applicable to statutory enactments *unless otherwise expressly provided.* Does § 412.011, subd. 2, governing the incorporation of newly organized villages, manifest a legislative intent as to the meaning of the term "population" when applied to new villages organized thereunder? Does it expressly provide for the determination of their respective populations other than by reference to the last state or federal census? Obviously the answer to these questions must be in the affirmative. The express provision for an incorporation census contained therein indicates a clear legislative intent that the population figure established thereby should govern the classification of such villages for statutory purposes. The census requirements of § 412.011, subd. 2, having their origin in L. 1885, c. 145, were so applied for many years before § 645.44 became effective under R. L. 1905, § 5514, and there is nothing in the latter to manifest a legislative intent to change this rule or to otherwise nullify the effect of such census requirements.

That it was intended that the incorporation census should continue to govern classification of newly organized municipal entities is manifested by *subsequent legislative enactments* making such census the basis for the apportionment to them of cigarette taxes (§ 297.13, subd. 3) and liquor excise taxes (§ 340.60, subds. 4 and 5); authorizing newly formed villages if they exceed 1,000 in population at the time of incorporation to adopt either optional plan B or optional plan C under § 412.541 for their respective local governments (§ 412.551, subd. 1); requiring a census for fourth class cities to be organized from contiguous territory, the population of which may not be disclosed by the prior federal census (§ 411.01, subd. 2); and eliminating requirements therefor in situations where an *existing* village might seek to adopt a city charter, or an *existing* city might propose a new charter under c. 410, since in such cases their respective populations may be ascertained by reference to the prior federal census.

It is clear that the legislature understood that in most situations only a special census would reveal the actual population of a newly organized village and hence made provision therefor with the intention that it should govern the status of such corporate entity until the next decennial census. As stated in Independent School Dist. No. 35 v. Borgen, 187 Minn. 539, 543, 246 N. W. 119, 121:

"* * * The authorization of a local census [under L. 1921, c. 417, § 4; G. S. 1923, § 2061, for per capita school tax purposes] is intended to meet conditions, however arising, which may make use of the last government census result in understatement."

Since there is nothing in § 340.11, subd. 10, which for its purposes compels resort to the prior federal census; and since there is nothing to manifest a legislative intent that § 645.44, subd. 8, rather than § 412.011, subd. 2, should control the applicability of § 340.11, subd. 10, with respect to villages organized subsequent to the latest federal census, it must follow that the term "population" in the latter enactment insofar as it relates to new villages was intended to mean the actual number of inhabitants therein disclosed by the incorporation census.

■ Our conclusion in this respect is strengthened by the anomalous situation that would arise if the construction sought by respondents were adopted. In the instant case the township lines are identical with those of the new village, but this is not usually the situation. Ordinarily a newly formed village is comprised either of part of a single township or of adjoining tracts taken from separate townships so that a prior federal census would form no basis for ascertaining its population. If respondents' contention is correct, such a village, even though less than 10,000 under its incorporation census, would be powerless, until the next decennial federal census, to establish a municipal liquor dispensary or determine the number of private liquor licenses it might issue. Dependent upon its incorporation date, this might well result in delays of from two to nine years before it would be authorized to establish a municipal liquor store or to issue licenses. It is significant that under respondents'

theory some villages organized since 1950 and now operating municipal liquor dispensaries would be doing so without statutory authority,[4] even though they are respectively less than 10,000 in actual population; while respondent village, with an actual population far exceeding the statutory limitation, would be lawfully maintaining its dispensary, notwithstanding its conflict with the clear legislative restrictions with respect thereto. We cannot conceive that the legislature intended any such result.

■ Respondents refer to opinions of the attorney general to the effect that the term "population" as used in the liquor control act (§§ 340.07 to 340.40) has reference to the number of inhabitants disclosed by the prior federal census. Examination of such opinions, however, reveals that they were submitted with respect to villages or cities organized prior to the federal census referred to in such opinions so that the incorporation census, being superseded by later federal census, no longer reflected accurate indications of their

---

[4]Villages newly incorporated out of territory for which there was no prior federal census, which before the succeeding federal census established municipal liquor stores based upon their incorporation census, include the following:

| VILLAGE | COUNTY | INCORPORATION CENSUS | DATE OF INCORPORATION | DATE OF ESTABLISHMENT OF FIRST MUNICIPAL LIQUOR STORE |
|---|---|---|---|---|
| Orr | St. Louis | 192 | June 7, 1935 | October 9, 1935 |
| Okabena | Jackson | 214 | July 7, 1938 | December 20, 1938 |
| Garvin | Lyon | 250 | May 29, 1945 | June 1, 1947 |
| Nisswa | Crow Wing | 415 | December 4, 1946 | May 27, 1947 |
| Lake Shore | Cass | 209 | March 19, 1947 | May 27, 1947 |
| Roseville | Ramsey | 4,529 | April 19, 1948 | February 16, 1949 |
| Fifty Lakes | Crow Wing | 162 | May 10, 1949 | July 7, 1949 |
| Fridley | Anoka | 2,016 | June 18, 1949 | September 26, 1949 |
| Lexington | Anoka | 569 | May 12, 1950 | December 20, 1950 |
| Spring Park | Hennepin | 221 | August 20, 1951 | March 10, 1955 |

respective populations.[5] None of these opinions related to a situation wherein the required incorporation census of a newly formed village was taken later than the federal census, and hence presented a more accurate population count with reference to such village. Likewise, the attorney general's opinion submitted with reference to population status for state-wide tax apportionment which is dependent upon the population ratio of local units to that of the state, which ratio of necessity must be dependent upon some common factor such as the prior federal census,[6] has no significance on questions such as the present one relating to the internal matters of a municipality.

■ It is suggested that municipally owned liquor dispensaries are more desirable and more effectively controlled than those privately operated. We do not take issue with this position or suggest which of the two methods is superior from a public viewpoint. Doubtless, benefits may accrue to a municipality out of an exclusive right to dispense intoxicating liquor within its boundaries. If this type of operation is deemed the more expedient and desirable, present restrictions thereon must be removed by legislative enactment rather

[5]Opinion Attorney General, No. 218-C-1, July 31, 1942, re St. Louis Park Village, organized prior to 1940 census.

Opinion Attorney General, No. 218-G-11, June 7, 1937, re Golden Valley Village, organized prior to 1930 census.

Opinion Attorney General, No. 218-G-13, May 17, 1939, re Keewatin Village, organized prior to 1930 census.

Opinion Attorney General, No. 218-G-1, February 6, 1940, re Forest Lake Village, organized prior to 1930 census.

Opinion Attorney General, No. 56-C, June 4, 1940, re Crystal Village, organized prior to 1930 census.

Opinion Attorney General, No. 218-G-6, May 6, 1946, re Village of Richfield, organized prior to 1940 census.

Opinion Attorney General, No. 56-C, September 24, 1947, re Bayport Village, organized prior to 1940 census.

[6]Opinion Attorney General, No. 218-K, August 10, 1954, holding that statewide apportionment of cigarette taxes under § 297.13, subd. 3, and liquor excise taxes under § 340.60, subds. 4 and 5, should be based upon the prior federal census except where municipalities were incorporated subsequent thereto.

than by judicial construction. Until that time, the clear legislative intent to limit authorization thereof to villages or cities of not more than 10,000 population must be respected and given effect. It follows in the instant case that the village of Bloomington with an established population of 12,643 inhabitants is without authority to establish a municipally owned liquor store and that hence its ordinance No. 59 adopted for such purpose is invalid.

The judgment appealed from is reversed and the case remanded with directions to enter judgment for an order adjudging ordinance No. 59 of the village of Bloomington to be invalid.

