## CITY OF ST. LOUIS PARK v. STAFFORD KING AND OTHERS.[1]

February 24, 1956.

No. 36,743.

[1]Reported in 75 N. W. (2d) 487.

*Edmund T. Montgomery* and *Richards, Janes, Hoke, Montgomery & Cobb,* for appellant.

*Miles Lord,* Attorney General, and *Lowell J. Grady,* Deputy Attorney General, for respondents.

NELSON, JUSTICE.

Action under M. S. A. c. 555 brought by the plaintiff for a declaratory judgment construing M. S. A. 297.13[2] and 340.60,[3] as amended,

---

[2]M. S. A. 297.13, subds. 1 and 3, as amended, read as follows:

"Subdivision 1. **Cigarette tax apportionment fund one-fourth to be distributed to municipalities.** All revenues derived from taxes, penalties, and interest under sections 297.01 to 297.13 and from license fees and miscellaneous sources of revenue shall be deposited by the commissioner in the state treasury and credited one-fourth to a special fund to be known as the 'Cigarette Tax Apportionment Fund,' which fund is hereby created, and the balance to the general revenue fund. The revenues in the apportionment fund shall be apportioned as provided in subdivision 2 to the several counties, cities, villages and boroughs in this state. Each county, city, village, and borough shall receive from the apportionment fund an amount bearing the same relation to the total amount to be apportioned as its population bears to the total population of all the counties, cities, villages and boroughs in this state; except, that for the purposes of sections 297.01 to 297.13 the *population of a county* shall be that part of its population exclusive of the population of the several cities, villages and boroughs within the county.

\* \* \* \* \*

"Subd. 3. **Certified list of municipalities; population.** The secretary of state shall deliver to the state auditor, within 90 days after the passage of Laws 1947, Chapter 619, a certified list of all the counties, cities, villages, and boroughs of the state with their respective populations according to the federal census of 1940. In the case of municipalities incorporated after a federal census the population shown shall be that given in the incorporation census. Upon the taking of *each federal census* the secretary of state shall deliver to the state auditor a like certificate within 30 days after the governor has filed with him the *certified copies of the census obtained from the director of the federal census.* Until the receipt of such a certificate, the

to require the secretary of state to certify to the state auditor a special census disclosing the population of the plaintiff city to be 35,292 on April 14, 1954; to require the state auditor to apportion cigarette taxes and liquor taxes on the basis of such special census; and to further require the treasurer to pay to plaintiff city its share of cigarette and liquor taxes based on such apportionment.

The facts in this case are undisputed. The parties stipulated to the reception in evidence of certain letters, providing, however, that the reception should be without prejudice to the right of the defendants to question the materiality of the facts therein contained as to the respective issues raised by the pleadings. Plaintiff city notified

state auditor shall make his apportionment upon the basis of the population of the various political subdivisions last certified to him." (Italics supplied.)

[3]M. S. A. 340.60, subds. 2 and 4, as amended, read as follows:

"Subd. 2. **Allocation of 30 percent of taxes collected.** 30 percent of the proceeds of the taxes collected under section 340.47, subdivision 1, shall be set aside and credited to a separate account and apportioned as provided in subdivision 3 to the several counties, cities, villages, and boroughs. Each county, city, village and borough shall receive from the apportionment account an amount bearing the same relation to the total amount to be apportioned as its population bears to the total population of all the counties, cities, villages, and boroughs of the state; provided that for the purpose of Laws 1947, Chapter 601, the population of the county shall be that part of its population exclusive of the population of the several cities, villages and borough in said county. Each county shall apportion the amount received by it to the various towns of the county in proportion to their population, except that the county shall retain for its use any portion attributable to the population of unorganized territory within the county.

\* \* \* \* \*

"Subd. 4. **Certified list of counties and municipalities.** The secretary of state shall deliver to the state auditor, within 90 days after the passage of Laws 1947, Chapter 601, a certified list of all the counties, cities, villages, and boroughs. In the case of municipalities incorporated since 1940 the population shown shall be that given in the incorporation census. Upon the taking of each federal census, the state auditor shall deliver to the secretary of state a like certificate within 30 days after the governor has filed with him the certified copies of the census obtained from the director of the federal census. Until the receipt of such a certificate, the state auditor shall make his apportionment upon the basis of the population of the various political subdivisions last certified to him as provided for in subdivision 3."

the state auditor on August 17, 1954, that it had become entitled to distribution of cigarette taxes and liquor taxes under said statutes on a basis which would take into account the population of the plaintiff city as determined by the Census Bureau of the United States Department of Commerce by a special census made April 14, 1954, which had been certified to the Governor. Plaintiff city took the position that, since this special census had been taken and certified to the Governor, it became the duty of the secretary of state to certify the result of the special Federal census of the city to the state auditor and that it was incumbent upon the state auditor in making allocations of cigarette and liquor taxes to substitute the population figure as determined by the special census in place of the population as determined by the general Federal census of 1950.

The population of St. Louis Park was 22,664 as certified by the director of the census of the United States to the Governor as of April 1, 1950; the population of the county of Hennepin was 676,579; and the total for the State of Minnesota 2,982,483. The apportionment and distribution of the state cigarette and liquor taxes are made on the dates of February 15 and August 15 of each year. The state auditor in making tax allocations pursuant to §§ 297.13 and 340.60 does so upon the basis of the aggregate population as determined by each decennial Federal census of all the cities, villages, boroughs, and counties of the state, all of which added together constitute the total population of the State of Minnesota.

The plaintiff city contended that the special census of the city would increase the total population of the state for the purpose of allocation of these taxes and would likewise increase the population of the county of Hennepin to the extent that the population of the city as shown by the 1954 special census exceeded the population as shown by the Federal census of 1950, a census taken every 10 years. The plaintiff city contended that, while such interpretation of the statute was contrary to an interpretation made by the attorney general of Minnesota rendered to the state auditor August 10, 1954,

nevertheless, it would not result in any absurdity by arbitrarily reducing the amount allocable to Hennepin County.

The state auditor advised the plaintiff city that under the ruling of the attorney general he would, as state auditor, have to disregard all such special census reports, even though taken and reported by the Federal Census Bureau; that he had no choice but to follow the advice of the attorney general, who under the constitution constitutes the legal advisor of state officials, including the state auditor. This refusal by the state auditor precipitated the present action. Plaintiff and defendants both moved for summary judgment pursuant to Rule 56 of Rules of Civil Procedure; defendants' motion was granted; and plaintiff appeals from the judgment entered.

The plaintiff bases its argument upon the following grounds: (a) The literal language of the statutes; (b) previous court decisions and administrative rulings; (c) analysis of the legislative intent expressed in the statutes; and (d) judicial policy favoring the use of the most recently obtained census wherever possible.

 In construing the statutes under consideration in the present controversy, the following statutes may be of some aid: M. S. A. 645.08 provides:

"In construing the statutes of this state, the following canons of interpretation are to govern, unless their observance would involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute:

"(1) Words and phrases are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning, or are defined in this chapter, are construed according to such special meaning or their definition;"

M. S. A. 645.19 provides:

"Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. *Exceptions expressed in a law shall be construed to exclude all others.*" (Italics supplied.)

M. S. A. 645.44 provides:

"The following words, terms, and phrases used in Minnesota Statutes or any legislative act shall have the meanings given them in this section, *unless another intention clearly appears.*

\* \* \* \* \*

"Subd. 8. **Population; inhabitants.** When used in reference to population, 'population' and 'inhabitants' mean that shown by the last preceding census, *state or United States, unless otherwise expressly provided.*" (Italics supplied.)

M. S. A. 600.18[4] requires the Governor to obtain from the director of the Federal census such certified copies thereof as will show the population of the several political divisions of the state.

This court has held in general that a statute must be enforced literally if its language embodies a definite meaning which involves no absurdity or contradiction, the statute in such case being its own best expositor. Peterson v. Halvorson, 200 Minn. 253, 273 N. W. 812. In Arlandson v. Humphrey, 224 Minn. 49, 27 N. W. (2d) 819, this court held that words of a statute are to be given their ordinary, popular meaning, according to common and approved usage of the language unless obviously used in a different sense, and in State v. Bolsinger, 221 Minn. 154, 161, 21 N. W. (2d) 480, 486, that "Where, in addition to the absence of tokens of a different meaning, a legislative intention is evinced that words are used with their approved and recognized meaning, no departure from such meaning is permissible."

Of course, there is no rational way of determining the meaning of words and phrases except by inquiring into the sense of their employment, in the connection in which they are found, keeping in mind the

---

[4] "600.18. FEDERAL CENSUS; POPULATION. The governor shall obtain from the director of the federal census such certified copies thereof as will show *the population of the several political divisions of this state,* which certified copies shall be filed in the office of the secretary of state, and thereafter the several political divisions of the state for all purposes, unless otherwise provided, shall be deemed to have the population thereby disclosed. Copies thereof, duly certified to by the secrtary of state, shall be prima facie evidence of the facts therein disclosed in all the courts of this state." (Italics supplied.)

common and approved usage of the words and phrases. We should consider their meaning in connection with the subject matter.[5]

■ The fundamental aim of this court in statutory construction is to ascertain and give effect to the intention of the legislature, as expressed by it in the language used. It is likewise the duty of the courts so to construe statutory enactments as to give effect to the obvious legislative intent. The whole statute must be considered to give effect to all its parts. 17 Dunnell, Dig. (3 ed.) §§ 8940, 8951.

■ Both statutes as amended contain the same, and only, exception to the method of apportionment in the following words: "In the case of municipalities incorporated after a federal census the population shown shall be that given in the incorporation census." Otherwise it is provided that the state auditor shall make his apportionment based upon the respective populations according to the Federal census of 1940. M. S. A. 645.19 provides that "Exceptions expressed in a law shall be construed to exclude all others." This court held in State, by Ervin, v. Goodman, 206 Minn. 203, 207, 288 N. W. 157, 159, that "An exception in a statute exempts from its operation something that would otherwise be within it."

In § 645.44, subd. 8, the legislature has provided that the word "population" and the word "inhabitants," when used in reference to population, mean that shown by the last preceding census, *state or United States,* unless otherwise expressly provided. No state census has been taken in Minnesota since the year 1905. No special Federal census was ever separately requested by any political subdivision in this state prior to the requests of the municipal subdivisions of Crystal, Richfield, and the plaintiff city in the year 1954.

[5]Bennett Comm. Co. v. N. P. Ry. Co. 195 Minn. 7, 261 N. W. 593; State ex rel. Hansen v. Walsh, 188 Minn. 412, 247 N. W. 523, followed in State ex rel. Quade v. Walsh, 188 Minn. 418, 247 N. W. 526; State v. Ristine (D. Minn.) 36 F. Supp. 3; Lynch v. Alworth-Stephens Co. (8 Cir.) 294 F. 190, affirmed, 267 U. S. 364, 45 S. Ct. 274, 69 L. ed. 660; Montgomery Ward & Co. v. Snuggins (8 Cir.) 103 F. (2d) 458; Mattson v. Flynn, 216 Minn. 354, 13 N. W. (2d) 11; Minnesota Farmers Mut. Ins. Co. v. Smart, 204 Minn. 101, 282 N. W. 658; Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394; Red Wing Malting Co. v. Willcuts (8 Cir.) 15 F. (2d) 626, 49 A. L. R. 459.

430

The plain meaning of the statutes involved here is that each political subdivision of the state will receive its fair share of cigarette and liquor taxes collected by the state. In general, the ratio of apportionment is arrived at by determining the relation that the population of the political division bears to the total population of all the political subdivisions of the state. It is therefore clear that the legislature provided an explicit formula for that purpose, in unambiguous terms, making it clear that this formula for apportionment must always be construed in connection with the population totals provided by the last preceding census, state or United States. Those census requirements are needed to facilitate the apportionment and are a necessary prerequisite to it. The function of the census is to determine the appropriate ratio, and it can only be useful under these statutes when it provides the populations of each political subdivision determined at the same time and for the same purpose, which can be added together to determine the total population of the state. And unless the population of each political division is determined at the same time as the whole state population, a fair apportionment will not be made in accordance with the language of the statute.[6] It therefore seems clear that there is no statutory authorization for the use of the special census in the manner urged by the plaintiff city. Until statutory authority is provided for an analysis of increases and decreases in population and the use of a special census, such as appellant urges, the court must recognize the present legislative intent as clearly embodied in the statutes. Ordinarily, no reliance can be placed in other statutes, except by express reference, to interpret a statute which is clear and free from ambiguity. See, 17 Dunnell, Dig. (3 ed.) § 8938.

The state auditor, following the demand by the plaintiff city for a revised apportionment based upon its special Federal census report, requested the opinion of the attorney general, which he received bearing date August 10, 1954, wherein the attorney general ruled that the

---

[6]Except of course, where municipalities are incorporated subsequent to the federal decennial census, in which latter case the incorporation census would apply for the purposes of the apportionment statutes here involved to the particular municipality incorporated. *See, M. S. A. 412.011, subd. 2.*

decennial Federal census of 1950 was controlling and not the 1954 special Federal census obtained by the plaintiff city. He ruled that the only single exception permitted under these statutes applied to an incorporation census of municipalities incorporated since the last decennial Federal census. The state auditor has continued to follow the opinion of the attorney general.

Opinions of the attorney general are not binding on the courts. They are persuasive, especially when such opinions are of long standing and when accompanied by administrative reliance thereon. See, 17 Dunnell, Dig. (3 ed.) § 8952(3). Here in fact the attorney general ruled upon the precise question involved on this appeal. The attorney general's opinion was set out fully in the record. We reach the same conclusion as did the attorney general that the statutes in question provide for an apportionment of tax revenue to villages, cities, and counties in the state according to the population of these various subdivisions in the relation that each bears to the total population of the state. This is what the legislature, in clear unambiguous language, stated was to be done according to the population as shown by the Federal census of 1940, which could only mean the decennial Federal census of that year. It could have no other census in mind since no special census of single political divisions had been taken in the State of Minnesota up to that time.

It is equally clear that the provision in the cigarette tax law which read: "Upon the taking of *each federal census* the secretary of state shall deliver to the state auditor a like certificate within 30 days after the Governor has filed with him the certified copies of the census obtained from the director of the federal census" (italics supplied) and the similar provision in the liquor tax law meant any decennial census taken in the future and in effect provided for a state-wide population census subject to, and limited only by, the exception as to the incorporation census of newly incorporated cities and villages. Obviously, the legislature intended that, in the case of municipalities incorporated after the taking of the regular decennial census, incorporation census would control the apportionment to be made to that recently incorporated municipality. That is the pattern

of these statutes. See, Ellis v. Village of Bloomington, Inc. 245 Minn. 292, 72 N. W. (2d) 350.

■ It seems clear in construing these statutes that the decennial Federal census of 1950, which was in effect a state-wide census, was the only census contemplated by each statute as being appropriate and entirely sufficient to fairly carry out its mandate of apportionment. Had the special census submitted by the plaintiff city contained a population enumeration of all government units in the state, or had the same been in effect a state-wide census, no objection would validly be voiced against an apportionment based on such census. No one seriously contends that the special Federal census of April 14, 1954, establishing an increase in plaintiff's population, may not be determinative of internal matters affecting only the plaintiff unit. See, Ellis v. Village of Bloomington, Inc. *supra*. The cases cited by the plaintiff village, including Opinion Attorney General, No. 56-B, August 16, 1950, fall into this category, being confined to the determination and settlement of internal matters having no state-wide application and being free from discrimination. They did not unsettle or in any manner interfere with any state-wide apportionment mandates, such as here involved, wherein, as the trial court said below, the plaintiff's population is only one factor in a variable fraction.[7]

In Sproul v. State, 153 Fla. 892, 16 So. (2d) 109, a similar claim was made to that of plaintiff in the case at bar, which the court rejected. There, it was held by the Florida court that a special census could not be used as the basis for determining a liquor license tax since the legislature intended that there be uniformity in the opera-

[7]Cases relied on by plaintiff village to support its contention that its special federal census comes within the provisions of the cigarette and liquor tax statutes and may apply to apportionment made under those statutes are: State ex rel. City of St. Paul v. District Court, 84 Minn. 377, 87 N. W. 942; Groves v. Board of Commrs. 209 Ind. 371, 199 N. E. 137; Luhrs v. City of Phoenix, 52 Ariz. 438, 83 P. (2d) 283; City of Compton v. Adams, 33 Cal. (2d) 596, 203 P. (2d) 745; In re Cleveland's Claim, 72 Okl. 279, 180 P. 852; Underwood v. Hickman, 162 Tenn. 689, 39 S. W. (2d) 1034; Ellis v. Village of Bloomington, Inc. *supra*.

tion of the law and that the use of a special census would result in discrimination. The court observed, in that case, that other counties where a special census had not been taken clearly specified similar increases in population.[8]

We cannot assume that the population of other state units of government, nor that the total population of the State of Minnesota, would remain constant from April 1, 1950, to the present. Obviously, this assumption would be necessary to sustain plaintiff's contention. The increase in the share which the plaintiff would receive under the increased population shown by its special federal census would bring about a decrease in the proportional share of other state recipient units. If such an exception is now to be made, that is more properly a function of the legislature than of the courts. If there is in fact any inequity in the distribution of these taxes to the plaintiff by reason of its increased population and its resulting increased governmental responsibility, that is also a matter that the legislature, and not the courts, must rectify.

Plaintiff contends that "judicial policy * * * [favors] the use of the most recently obtained census wherever possible." We have no quarrel with that proposition, but the legislature has determined here what, if any, recently obtained census shall apply, to the exclusion of a special Federal census, or any other census not excepted, which is not in effect a state-wide census, and we must abide by its intent clearly set forth by statutory enactment and its choice of policy in that regard.

It is not for the courts to make, amend, or change the law, but only to apply it. Such must be the construction and the interpretation placed upon §§ 297.13 and 340.60, as amended, until the legislature otherwise provides, either by change or by amendment. Therefore, future apportionment must continue to be based on plaintiff's population of 22,664 as of April 1, 1950, in the relation that it bears to the state's total population as of that date, until another

---

[8]See following citations wherein cases on this subject are collected: City of Nashville v. Kizer, 194 Tenn. 357, 250 S. W. (2d) 562; Haralson v. State ex rel. King, 260 Ala. 473, 71 So. (2d) 79, 43 A. L. R. (2d) 1343.

434

state-wide or Federal decennial census provides another enumeration of the number of its inhabitants, as a part of that census, as well as the total population of all of the political divisions of the state. The trial court was justified in entering summary judgment on the motion of the state below.

Affirmed.

[1]Reported in 75 N. W. (2d) 496.