# IN RE JURY PANEL SELECTED FOR DAKOTA COUNTY. DAKOTA COUNTY MEMBERS OF THE BAR v. DAKOTA COUNTY OFFICIALS.

150 N. W. (2d) 863.

May 12, 1967—No. 40,733.

*Gerald W. Kalina* and *Lawrence L. Lenertz,* for appellants.
*J. Jerome Kluck,* County Attorney, for respondents.

PETERSON, JUSTICE.

Two methods of selecting grand and petit jurors are provided by statute, depending upon the population of the county. In counties of more than 100,000 population, selection is made by the judges of district court; in all other counties, the County Board of Commissioners

makes the selection.[1] The question in this case is whether the selection of jurors in Dakota County shall be by the court or by the commissioners, and the answer depends upon whether or not Dakota County has a population of more or less than 100,000. The answer is to be found in a proper construction of the statutory definition of "population" contained in Minn. St. 645.44, which provides:

"Subdivision 1.  The following words, terms, and phrases used in Minnesota Statutes or any legislative act shall have the meanings given them in this section, unless another intention clearly appears.

\* \* \* \* \*

"Subd. 8.  When used in reference to population, 'population' and 'inhabitants' mean that *shown by the last preceding census,* state or United States, unless otherwise expressly provided." (Italics supplied.)

What is apparently a simple question and answer is complicated only by the fact that Dakota County has had *two* censuses in this decade. The regular county-wide 1960 Federal decennial census established a population of 78,303. However, a special Federal census

---

[1] Minn. St. 593.13 provides in part: "The county board, at its annual session in January, shall select, from the qualified voters of the county, 72 persons to serve as grand jurors, and 144 persons to serve as petit jurors, and make separate lists thereof, which shall be certified and signed by the chairman, attested by the auditor, and forthwith delivered to the clerk of the district court. If in any county the board is unable to select the required number, the highest practicable number shall be sufficient."

Section 593.14, subd. 1, provides in part: "In all counties having a population of more than 100,000, judges of the district court, or a majority thereof, of the district embracing such county or counties shall, annually, in the month of December of each year, at the courthouse in such county, select from the qualified electors of the county 125 persons properly qualified to serve as grand jurors, and 2,000 persons properly qualified to serve as petit jurors, and shall make out and certify separate lists thereof, and forthwith deliver such lists to the clerk of the district court of the county; and from these lists of persons to serve as grand jurors and as petit jurors shall, respectively, be drawn all grand jurors and petit jurors at any time required for the transaction of business in the district court of such county."

was taken in six of the larger municipal subdivisions in 1965 [2] and established population gains in those six subdivisions in such numbers that, if substituted for the 1960 census figures in those subdivisions and added to the 1960 figures for the other subdivisions, this census would ostensibly increase the county-wide population to 104,905.[3] The Board of County Commissioners, acting upon the exclusive use of the county-wide 1960 decennial census, has selected the jurors for 1967. This action is challenged by petitioners, who claim that the combined result of *both* censuses must be used. The trial court found, "The challenge not true," and ordered the proceeding dismissed. Petitioners appeal from that order.

■ It is doubtful, at the outset, whether these petitioners have standing to raise the issues presented.[4] This proceeding was commenced by challenge [5] pursuant to § 631.23, which provides:

"A challenge to the panel is an objection made to all the petit

---

[2] The legislature provided for such special census for purposes of apportionment of state cigarette and liquor taxes to municipalities by L. 1963, c. 282, amending Minn. St. 297.13 and 340.60 by adding a new paragraph, subd. 7, to each. Section 297.13, subd. 7, provides: "In the year 1965, and each tenth year thereafter, the governing body of any city, village, borough, or town having village powers under Minnesota Statutes, Section 368.01, or under special law, may, by resolution, request the federal director of the census to take a special census for the purpose of determining the population for the purpose of receiving tax distributions under this section. A certified copy of the results of such census shall be filed with the state auditor by the political subdivision conducting the census and after such filing and until the completion of the next federal decennial census the population of the city, village, town or borough shall be that disclosed by the special census. The expense of taking such census shall be paid by the municipality requesting such census."

Section 340.60, subd. 7, reads substantially the same.

[3] The parties stipulated the facts.

[4] Respondents have not raised this issue. We do so on our own motion because jurisdiction cannot be conferred by consent.

[5] "The undersigned, members of the Bar of the above Court, for themselves and for various other members of the Bar of the above Court, and for their respective clients whose cases may appear for trial by the jurors selected to hear cases commencing in January, 1967, pursuant to the provisions of

jurors returned, and may be taken by either *party*. It can be founded only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury, and shall be taken before a jury is sworn, and be in writing, specifying plainly and distinctly the facts constituting the ground of challenge." (Italics supplied.)

Petitioners are "Dakota County Members of the Bar" and the petition is subscribed by two members of the bar "for themselves and for various other members of the Bar." They do not purport to act for any identified party to litigation but, rather, only "for their respective clients whose cases may appear for trial" by the jurors selected by the county commissioners.

If we were to treat this challenge as in the nature of an action for declaratory judgment, it is doubtful that a justiciable controversy is presented. Persons having only such interest in a statute as does the public generally ordinarily do not have the necessary legal interest for maintaining an action for declaratory judgment. State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544.[6] We can appreciate that attorneys as officers of the court have a peculiar interest in the proper selection of jurors as a vital part of our judicial processes, but this aspect of the administration of justice

---

M. S. A. 631.23, respectfully challenge and object to the panel of jurors above described on the following grounds:

\* \* \* \* \*

"WHEREFORE, the undersigned pray that the Court forthwith discharge the panel of jurors heretofore selected and thereafter select jurors according to the provisions of M. S. A. 593.14.

\* \* \* \* \*

"LAWRENCE L. LENERTZ
GERALD W. KALINA"

[6] See, also, Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 290 N. W. 802; Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343; Minneapolis Federation of Men Teachers v. Board of Education, 238 Minn. 154, 56 N. W. (2d) 203; Port Authority of City of St. Paul v. Fisher, 269 Minn. 276, 132 N. W. (2d) 183.

should be an equal concern of all citizens. State ex rel. Passer v. Renville County Board, 171 Minn. 177, 213 N. W. 545, 52 A. L. R. 916.

Notwithstanding these expressions of doubt, we have concluded to dispose of the case on its merits and to affirm the order of the trial court. The issue is clear-cut; the issue has been fully briefed and argued; and the record is as complete as ever it could be, regardless of whether an actual litigant might subsequently more properly invoke the challenge. No useful purpose would be served by disposing of the case without an expression of opinion on the merits. Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 5 to 6, 74 N. W. (2d) 305, 309.

■ It is our opinion that the challenge is not well taken. The statutory reference to the official census, in the singular, would itself seem to exclude the plural use of both a 1960 and a 1965 census. This is not a question of taking judicial notice of what the population may in fact be in Dakota County, if indeed it were judicially cognizable.[7] Rather, it is a question of what the legislature intended the test to be for the purpose of this statute. The legislature obviously intended that the largest counties should have a different method of jury selection, both as to the method of selection and the numbers of jurors selected. It was deemed advisable to identify such counties by population rather than name, a common method of classification.[8] Having established a

---

[7] The parties stipulated in part as follows: "The Metropolitan Planning Commission makes an annual study of population in Dakota County each year and its study and estimate of population in Dakota County shows that the county population exceeded 105,000 persons in 1965 and exceeded 115,000 persons in 1966."

The population figures furnished by even so reliable a source as the Metropolitan Planning Commission are nevertheless only *estimates* or a measurement of trends. It is at least conceivable, moreover, that some of the growth in the political subdivisions having a 1965 census was the product of intracounty shift of population from one subdivision to the other.

[8] The legislature could, had it wished, specifically have identified Dakota County by name or made special provision for it as it did for Anoka and Washington Counties. L. 1959, c. 219.

clear-cut standard of classification by population, the legislature established a clear-cut test of population.

The statutory test applies "unless another intention clearly appears." Had the legislature intended any piecemeal census determination for any county it could have specifically so provided. There is no indication whatever of a legislative intent that authorization of a special census for apportionment of cigarette and liquor taxes was to be used for any other purpose than that.[9] It is one thing to apportion tax receipts to a specific municipality—a matter of direct concern only to that municipality. It is quite another thing to use such a partial census in determining the population of a county as a whole when less than all of the municipal subdivisions of the county are contemporaneously enumerated by census.[10]

Petitioners rely mainly upon Ellis v. Village of Bloomington, 245 Minn. 292, 72 N. W. (2d) 350, but this reliance is misplaced. Although the case did result in crediting population figures established by a special census subsequent to the regular decennial census, the facts dictating that result were otherwise controllingly different. And, al-

---

[9] Opinions of the attorney general as to the applicability of these statutes for other purposes have varied according to different situations presented: Opinion Attorney General, No. 183r, April 6, 1966, stated that Minn. St. 297.13, subd. 7, is determinative of the population of a municipality for purposes of requiring a permanent voter registration system if the special census indicates a population in excess of 10,000 persons. Opinion Attorney General, No. 471k, December 21, 1964, stated that the special census could be used to determine the population of a village for the purpose of determining salaries of village officials. Opinion Attorney General, No. 798d, July 22, 1966, held that such special census, where less than county-wide in scope, could not be used for purposes of redistricting by the county board under § 375.02. The correctness of such opinions is not before us, and we express no opinion concerning them.

[10] We commend to the legislature that where a different result is intended than indicated in this case, each such statute might more specifically stipulate what different test of population is intended. As it stands, any other result may create innumerable questions and potential for abuse, including races for special censuses to gain a statutory advantage for municipalities or counties in situations not contemplated by the legislature.

though our primary function there, as here, was to ascertain and give effect to the legislative intent, the differences in the statutes appeared to manifest a different legislative intent. The village of Bloomington, which sought the power to establish a municipal liquor dispensary, was limited by the statute permitting such a dispensary only in villages of not more than 10,000 inhabitants.[11] The village, accordingly, claimed that its population was less than 10,000. The last Federal census, 1950, established a population of 9,902; but a special census taken in 1953, as provided by statute for incorporation purposes,[12] established a population of 12,643.

A first difference was that the determination of population involved neither an estimate of population nor a combination of the results of more than one census. There was, indeed, no real basis in fact for asserting a lesser population, for the village had at all times accepted an apportionment of cigarette and liquor taxes from the state auditor on the basis of the later, larger population figures. A second difference was in the distinctly different legislative history of the municipal liquor statute manifesting an intent to use a population test different than that prescribed by § 645.44, subd. 8, for § 645.44, subd. 1, provides that the test of the last preceding census is applicable only "unless another intention clearly appears." The statute providing for an incorporation census antedated the statute governing establishment of municipal liquor dispensaries. We held, on that record, "The express provision for an incorporation census contained [in § 412.011, subd. 2] indicates a clear legislative intent that the population figure established thereby should govern the classification of such villages for statutory purposes." 245 Minn. 298, 72 N. W. (2d) 354.

Affirmed.

---

[11] § 340.11, subd. 10.
[12] § 412.011, subd. 2.