**Patrick Brian STEWART, Respondent,**

v.

**Christopher Michael KOENIG, et al., Appellants.**

No. A08–1209.

Supreme Court of Minnesota.

June 10, 2010.

Peter C. Sandberg, Sandberg & Sandberg, LLC, Rochester, MN, for respondent.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MI; and Angela C. Shackleford, LaBore, Giul-

iani, Cosgriff & Viltoft, Ltd., Hopkins, MN, for appellants.

## OPINION

DIETZEN, Justice.

Respondent Patrick Brian Stewart commenced this negligence action against appellant Christopher Michael Koenig for injuries Stewart sustained as a result of a bicycle-car accident that occurred on Douglas Trail, a state recreational trail. At trial, Stewart asserted that Koenig, who was driving a car, was a "trail user" at the time of the accident under Minn. R. 6100.3400, subp. 6(D) (2009), and therefore subject to a rule that required him to yield the right of way. The district court disagreed and declined to give Stewart's proposed jury instruction. The jury returned a special verdict in favor of Koenig and judgment was entered. The court of appeals reversed, concluding that Koenig was a "trail user" under Minn. R. 6100.3400, subp. 6(D), and remanded to the district court for a new trial. We granted review. Because we conclude that Koenig was not a "trail user" at the time of the accident, we reverse the court of appeals.

Douglas Trail (the trail) is a state recreational trail located in Olmsted County and operated by the Minnesota Department of Natural Resources (DNR). On June 1, 2005, Koenig drove his mother's car to a friend's house, which has a private gravel driveway that crosses the trail and then connects to the main road; hence, it is necessary to cross the trail to access the main road. Previously, Koenig had visited his friend's house numerous times, had used the trail for bicycling and skateboarding, and was aware that bicyclists and others used the trail.

Stewart is an avid bicyclist who was familiar with the trail and had used it

"hundreds of times." He knew that there was a private driveway that crossed the trail. Stewart estimated that at the time of the accident he was bicycling at approximately 18–20 miles per hour.

The bicycle-car accident occurred where the private driveway crosses the trail. Koenig testified that he was driving his car slowly through the crossing when he collided with Stewart's bicycle. Stewart admits that he was chatting with a friend bicycling next to him at the time of the accident and did not reduce his speed as he approached the crossing. As a result of the collision, Stewart suffered a fractured vertebra in his neck and permanent slippage of one vertebra over the other.

Stewart sued Koenig for negligence and damages for his resulting injuries. At trial, Stewart argued that Koenig was a "trail user" at the time of the accident pursuant to Minn. R. 6100.3400, subp. 6(D), and therefore required to yield the right of way to Stewart. Subpart 6(D) provides that a trail user who is about to enter onto or cross a trail treadway must yield the right of way to any trail user already on the trial. Based on this rule, Stewart proposed the following jury instruction:

> You are instructed that Defendant Christopher Koenig was about to cross a trail treadway, and Plaintiff Patrick Stewart was a trail user already on the treadway to be crossed. A violation of this regulation is negligence per se, and Defendant Christopher Koenig has no legal excuse for violating the regulation.

Koenig countered, and the district court agreed, that he was not a "trail user." Therefore, the court rejected Stewart's proposed jury instruction. Rather, the court gave common law negligence instructions to the jury.[1]

---

1.  Specifically, the district court instructed the     jury:

The jury returned a special verdict finding that Stewart was negligent in the operation of his bicycle, that his negligence was the direct cause of the accident, and that Koenig was not negligent in the operation of his car. The jury also found that Stewart sustained a permanent injury, but awarded him no damages.

Stewart brought a post-trial motion for a new trial, asserting, among other things, that the district court abused its discretion in failing to give his proposed jury instruction. The court denied Stewart's motion, and Stewart appealed. The court of appeals reversed and remanded for a new trial, concluding that the district court's jury instructions did not accurately state the law, and that the jury should reconsider the issue of damages along with liability. *Stewart v. Koenig*, 767 N.W.2d 497, 500–01 (Minn.App.2009). We granted review.

■ Stewart argues that the district court erred in failing to instruct the jury that Koenig was a "trail user" under applicable DNR rules, that Koenig violated a DNR rule when he failed to yield the right of way to Stewart, and therefore Koenig was negligent per se. Koenig counters that he was not a "trail user" within the meaning of Minn. R. 6100.3400, subp. 6(D).

■ The district court has broad discretion in determining jury instructions, and we will not reverse where jury instructions "overall fairly and correctly state the

applicable law." *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn.2002). Further, the interpretation of a state rule is a question of law that we review de novo. *In re Alexandria Lake Area Sanitary Dist.*, 763 N.W.2d 303, 310 (Minn.2009). We apply the canons of construction set forth in Minn. Stat. ch. 645 to interpret the meaning of state rules. Minn.Stat. § 645.001 (2008) (stating that the provisions of chapter 645 "govern all rules"). Generally, we construe the words and phrases of a rule according to their "common and approved usage." Minn.Stat. § 645.08 (2008).

By statute, the Commissioner of Natural Resources is directed to "establish, develop, maintain, and operate" state recreational trails. Minn.Stat. § 85.015 (2004). Additionally, section 85.015 provides the Commissioner with the authority to acquire lands by gift or purchase, in fee or easement, for use as state recreational trails. Pursuant to its authority, the DNR has acquired land, including railroad lands and right-of-way easements, to establish a state trail system. For example, the DNR acquired railroad land and right-of-way easements, and then used the land to establish Douglas Trail. *See* Minn.Stat. § 85.015, subd. 4. The legislature provided that when the DNR acquires private property and right-of-way easements for use as a state recreational trail, a private property owner is granted a permanent

---

The violation of the duty to use reasonable care is negligence. The duty of reasonable care includes these duties. Drivers must keep a reasonable look-out. A driver must keep his or her vehicle under reasonable control. Whether any of these duties was violated depends on the risks of the situation, dangers that were known or could have been anticipated, and all the existing circumstances. A person is entitled to assume that others will use reasonable care. A person is also entitled to assume that

others will obey the law. However, a person is only entitled to assume that others will use reasonable care or will obey the law until it reasonably appears that they will not.

*See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 25.12 (5th ed. 2006); 4A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 65.10 (5th ed. 2006).

easement of access.[2] Minn.Stat. § 85.015, subd. 1b(a).

Additionally, the Commissioner has the power to "adopt and promulgate reasonable rules" governing the use and enjoyment of state recreational trails. Minn. Stat. § 84.03 (2008). Pursuant to his authority, the Commissioner has promulgated rules regulating the use and enjoyment of state trails. *See* Minn. R. 6100.3000–.4300 (2009). The DNR rules limit the types of activities that are permitted on state trails. Specifically, "trails may be used for snowmobiling and all nonmotorized forms of recreation, including but not limited to hiking, bicycling, horseback riding, snowshoeing, cross-country skiing, camping, and picnicking." Minn. R. 6100.3400, subp. 1. More importantly, the rules state that "[n]o motor vehicle, other than a snowmobile, shall be operated within a trail," subject to certain exceptions not applicable here. *Id.*, subp. 2.

Subpart 6 of this rule, which addresses traffic control, contains the rules of the road applicable to state trails. At issue is subpart 6(D), which provides that "[a]ny trail user who is about to enter onto or cross a trail treadway, shall yield the right of way to any trail user already on the treadway to be entered or crossed." A "treadway" is defined as "that part of the trail constructed for traveling." Minn. R. 6100.3300 (2009).

The question we must answer is whether Koenig was a "trail user" within the meaning of subpart 6(D) at the time of the accident. Stewart suggests that the phrase "trail user" in subpart 6(D) applies broadly to any person who physically uses the trail for any purpose. Conversely, Koenig argues that he was not a "trail user" within the meaning of subpart 6(D). It is undisputed that at the time of the accident Koenig was crossing Douglas Trail pursuant to an easement granted to the property owner for access to the main road.

The DNR rules expressly limit the activities that are designated as permitted uses of state trails to snowmobiling and all nonmotorized forms of recreation. *See* Minn. R. 6100.3400, subp. 1. Subpart 6(D) applies to those who use the trail for a permitted use. Conversely, subpart 6(D) does not apply to those who use the trail for a use that is not permitted. Koenig was not "using" the trail for any of the permitted uses; rather, he was crossing the trail for access to the main road. Consequently, we conclude that Koenig was not a "trail user."

Stewart and the court of appeals rely on *Erickson v. State*, 599 N.W.2d 589 (Minn. App.1999), to support a broader interpretation of "trail user." In *Erickson*, the court of appeals considered, among other things, the meaning of "use" of a logging road in Minn.Stat. § 3.736, subd. 3(p) (1998). But *Erickson* did not interpret the applicable language of the DNR rules. Thus, *Erickson* is inapposite.

Moreover, concluding that an easement-user is a "trail user" may produce absurd results. We observe that such a conclusion may subject easement-users to curfews imposed by the DNR. *See* Minn. R. 6100.3400, subp. 5 ("[a]ny specific use of a trail may be limited to hours designated by

---

**2.** It is not clear whether the DNR owns an easement or fee title to Douglas Trail. *See* Minn.Stat. § 85.015, subd. 1 (the DNR "may acquire lands by gift or purchase, in fee or easement, for the trail"); *State, by Washington Wildlife Pres., Inc. v. State*, 329 N.W.2d 543, 546 (Minn.1983) (recognizing that the DNR's property interest in the trails is limited to the railroad's original interest, i.e., fee title or right-of-way easement). But it is undisputed that the DNR's property interest in Douglas Trail is subject to the rights of the property owner and their permissive users to cross the trail for access to the main road.

the commissioner and any use in violation of such limitation is unlawful"), and Minn. R. 6100.4300 (2009) (a person who violates the DNR rules "shall be guilty of a misdemeanor and subject to arrest"). Our interpretation avoids this potential result.

We recognize that our interpretation of subpart 6(D) results in the conclusion that there is no DNR right-of-way rule applicable to a crossing accident involving an easement-user and a "trail user." But it is not the prerogative of this court to write such a rule where none exists. *See City of St. Louis Park v. King*, 246 Minn. 422, 433, 75 N.W.2d 487, 495 (1956) (declaring that "[i]t is not for the courts to make ... the law, but only to apply it").

■ In summary, we conclude that an easement-user who crosses a state trail for purposes of access to the main road as contemplated by section 85.015, subdivision 1b, is not a "trail user" within the meaning of Minn. R. 6100.3400, subp. 6(D). Koenig was not a "trail user" at the time of the accident, and therefore the district court did not abuse its discretion in rejecting Stewart's proposed jury instruction and denying Stewart's motion for a new trial on the issue of liability.[3] As a result, we reverse the court of appeals and affirm the judgment of the district court.

Reversed.

---

**3.** Because we reverse the court of appeals and affirm the jury verdict, there is no need for a trial on damages. Thus, the court of appeals'

decision to remand for a new trial on damages is vacated.