No. 45,029

SOHIO PETROLEUM COMPANY, et al., *Appellants*, v. BOARD OF COUNTY COMMISSIONERS OF RUSSELL COUNTY, KANSAS, et al., *Appellees.*

(440 P. 2d 554)

Opinion filed May 11, 1968.

*Tom C. Triplett,* of Wichita, argued the cause, and *Michael S. Holland* and *Herbert N. Holland,* both of Russell, *George B. Collins, Robert Martin, K. W. Pringle, Jr., William F. Schell, Robert M. Collins, William L. Oliver, Jr.* and *William V. Crank,* all of Wichita, *Thomas M. Burns* and *Peter J. Wall,* both of Denver, Colorado, were with him on the brief for the appellants.

*Jan G. Banker,* County Attorney, argued the cause, and *John C. Woelk,* of Russell, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover ad valorem taxes for the year 1965 paid under protest. The plaintiffs allege the taxes they seek to recover are the result of discriminatory, arbitrary, unjust and inequitable assessment of their oil and gas properties owned in Russell County, Kansas.

The trial court without hearing the merits of the case dismissed the action and granted summary judgment in favor of the defendants on the ground that the written statement in which the plaintiffs protested these taxes failed to conform to the requirements of K. S. A. 79-2005. Appeal has been duly perfected to this court by the plaintiffs from the foregoing judgment and from the order denying a rehearing or a new trial.

The primary question is whether the protest statement filed by the appellants with the County Treasurer of Russell County, Kansas, upon the payment of the first half of the 1965 ad valorem taxes complied with the provisions of K. S. A. 79-2005.

Throughout the year 1965 Sohio Petroleum Company, as well as

other individuals and businesses, joining as plaintiffs, hereinafter referred to collectively as the "Taxpayers," were the owners of undivided interests in some thirty producing oil and gas leases in Russell County, Kansas. The value of these leases as of January 1, 1965, was appraised by Russell County, hereinafter referred to as the "County," through its agents for the purpose of assessing personal property taxes. The County's appraisals resulted in an assessment of $40,674.62 of personal property taxes for the year 1965 attributable to these leases.

Pursuant to K. S. A. 79-2004a the Taxpayers on the 13th day of December, 1965, paid to the County Treasurer $20,337.31, which represents one-half of the total taxes billed for the year 1965, and on the 15th day of June, 1966, paid the remaining one-half.

Accompanied with the payment made on the 13th day of December, 1965, the Taxpayers pursuant to K. S. A. 79-2005 made and filed a written statement with the County Treasurer protesting a portion of their 1965 personal property taxes. Of material importance to this appeal are the contents of this statement. The first paragraph, after identifying the Taxpayers, reads:

". . . 'TAXPAYERS', hereby protest the payment of $20,112.51 (of the total payment of $40,674.62) as taxes on the oil and gas properties described on Exhibit 'A' (attached hereto and made a part hereof) for the year of 1965, for the reason that said amount includes a grossly excessive valuation and assessment as to subject oil and gas properties resulting in excessive, illegal and void taxes in the sum of $20,112.51, which amount represents that portion of the taxes billed that are based upon an assessment in excess of 22% of the justifiable value of the oil and gas properties listed, inasmuch as other real and personal property in said county is assessed at 22% of its justifiable value."

The foregoing is actually a summarization of the information contained in Exhibit A attached to the statement. This exhibit has been carefully prepared. It lists and describes each of the thirty leases, and for each individual lease it sets out five columns as follows: (1) assessor's valuation; (2) valid valuation; (3) taxes billed; (4) correct taxes; and (5) void taxes.

The "assessor's valuation" is the County's appraisal of the leases; the "valid valuation" is the portion of the County's appraisal Taxpayers believe is correct; the "taxes billed" are the 1965 taxes assessed by the County; the "correct taxes" are the portion of the taxes billed that the Taxpayers concede to be proper; and the "void taxes" are the portion of the taxes billed that are being protested.

For the thirty leases as listed in Exhibit A the total assessor's

valuation is $906,480; the total valid valuation is $459,416; the total taxes billed were $40,674.62; the total correct taxes are $20,562.11; and the total void taxes are $20,112.51.

Also included within the text of the statement are the reasons and grounds upon which the protest is made. Basically, it is contended the County's procedure in assessing the properties was arbitrary, discriminatory and at a higher ratio than other properties in the county. The law upon which they rely is fully set forth.

Twenty-eight days following the payment of the first half taxes the Taxpayers filed this action in the district court of Russell County, Kansas. Joined as defendants were all state and county officials, school boards and other taxing governmental bodies who were connected in any manner with the assessment, collection or payment of these taxes. The grounds upon which the cause of action was brought were the same as those alleged in the protest statement. The petition stated the action was authorized by K. S. A. 79-2005 and that all requirements of the statute had been satisfied. The relief sought was a credit against the second half payment of the improper taxes paid with the first half payment, or in the alternative, a recovery of the improper taxes and an injunction against any future assessing or collecting of such taxes.

All of the defendants, including the appellees, filed motions to dismiss. The grounds given in support of the motion were that the petition failed to state a cause of action against them, and that the court had no jurisdiction over these defendants. The trial court on the 6th day of May, 1966, dismissed all defendants with the exception of the County Treasurer, the County Clerk and the Board of County Commissioners of Russell County, appellees, whose motion was overruled. No appeal has been perfected from the order of the trial court dismissing the other defendants from the action.

Thereafter the appellees answered by joining issues, and alleged essentially an affirmative defense—that the procedure used in assessing the properties in question was lawful, proper and authorized by statute, citing K. S. A. 79-1412a, *Seventh*.

On the 15th day of June, 1966, the Taxpayers paid the remaining one-half of the 1965 personal property taxes, and accompanied with the payment was a letter informing the County Treasurer as follows:

"Enclosed please find check of Sohio Petroleum Company in the amount of

$20,337.31 in payment of the last half of the 1965 ad valorem taxes on its property in Russell County.

"This payment is made under protest pursuant to K. S. A. 79-2005. The reasons and details of the protest are set out in a statement of protest filed with your office at the time the first half of the 1965 ad valorem taxes on this property was paid to your office. A copy of this statement protesting this tax is being sent to all bodies levying taxes on this property.

"We would appreciate your returning to us a receipt for the payment of taxes paid under protest."

The check stub accompanying the payment of the first half of the 1965 taxes recited:

"First Half payment of 1965 ad valorem taxes totaling $40,674.62 of which $20,112.51 is being paid under protest as set forth in detail in the protest filed herewith and made a part hereof."

The check stub accompanying the payment of the second half of the 1965 taxes recited:

"Second half payment of 1965 ad valorem tax totaling $40,674.62 of which $20,112.51 is being paid under protest as set forth in detail in the protest previously filed with payment of first half taxes."

Several days before the trial of this action the appellees filed their second motion to dismiss on the ground that the petition failed to state a cause of action against the appellees. This was the same reason advanced in support of the appellees' first motion which the trial court had previously overruled.

The trial of the case was set for the 1st day of December, 1966, but immediately before the trial was to begin, the court conducted a hearing on the appellees' motion to dismiss. At the hearing, evidence in the form of a stipulation and an affidavit made by Doris Jones, the Treasurer of Russell County, were presented to and admitted by the court.

The stipulation recited that Mrs. Jones received a payment of one-half of the full amount of plaintiffs' taxes, along with the written protest statement, on the 13th day of December, the remaining one-half of the taxes and the letter of transmittal on June 15, 1966, and that the total amount of taxes levied by Russell County against the plaintiffs for the year 1965 was $40,674.62.

The affidavit of Mrs. Jones, offered by the appellees, contained statements of fact which were not previously of record or included within any of the pleadings. It recited that Mrs. Jones on the 13th day of December, acting solely from her interpretation of the Taxpayers' check for $20,337.31, and the written protest statement she received that day, placed $20,112.51 of the amount received

in a fund for impounded taxes, and disbursed the balance of $224.80 to the proper municipalities. Similarly, on the 15th day of June, 1966, based upon her interpretation of the protest statement and the Taxpayers' check for $20,337.31, she placed another $20,112.51 in a fund for protested taxes, and disbursed the balance to the proper municipalities. According to these statements Mrs. Jones as of June 15, 1966, had placed two amounts of $20,112.51 each, or a total of $40,227.02 of the total taxes of $40,674.62 in a protest tax fund. The affidavit of Mrs. Jones further states that on the 14th day of September, 1966, acting pursuant to a court order, she transferred from said fund one of the $20,112.51 amounts.

From the foregoing stipulation, the affidavit of Mrs. Jones, and the pleadings on file, the trial court made certain findings and rulings which ultimately resulted in the dismissal of the appellants' protest action and summary judgment in favor of the appellees.

In summary, the findings and rulings of the trial court were as follows:

(1) The Taxpayers' written protest statement filed on December 13, 1965, failed to comply with K. S. A. 79-2005 for the reason that it did not set out as required the exact portion of taxes being protested. The trial court said, "the payment actually received was $20,331.31, and the 'exact portion' being protested was stated as $20,112.51, and there is no statement that half that amount was being protested on payment of the first half taxes."

(2) The County Treasurer interpreted the written protest statement on December 13, 1965, and again on June 15, 1966, as protesting $20,112.51 out of each payment of $20,337.31. This interpretation was not only a proper interpretation but the interpretation required by law.

(3) The County Treasurer on December 13, 1965, and on June 15, 1966, placed $20,112.51 in an impounded fund as required by K. S. A. 79-2005, and said impounded fund could not be disbursed to the proper municipalities.

(4) The plaintiffs were responsible for the County Treasurer impounding an excessive amount of taxes which caused undue hardship on the governmental instrumentalities and is contrary to the rules of equity.

From the foregoing findings and rulings the trial court concluded the Taxpayers' action should be dismissed and summary judgment was entered in favor of the defendants.

The appellants filed a timely motion for a rehearing or a new trial pursuant to K. S. A. 60-259. While this motion was pending and with leave of the court, the appellants took the deposition of Mrs. Jones, the County Treasurer of Russell County. The deposition disclosed that Mrs. Jones' treatment of the payment received on the 13th day of December, 1965, as stated in her affidavit, was not based upon her reliance or interpretation of the appellants'

written protest statement because she had not read the statement at that time, and, in fact, has never read the entire protest statement. When questioned concerning the impounding of $20,112.51, Mrs. Jones stated that this amount, as well as the balance of the total payment, was deposited in the same bank account along with all other taxes, whether protested or not, and from this same amount she made disbursements, although the bookkeeping entries in her office carried the taxes paid under protest in a separate account. Also, according to Mrs. Jones' testimony, the governmental instrumentalities received their full distributions of the 1965 tax collections up to July, 1966, when for the first time there was a 5% reduction in the third disbursement. Finally, Mrs. Jones admitted that her affidavit which had been presented to the trial court contained false statements.

Notwithstanding the obvious conflict between the affidavit and deposition, the trial court denied the appellants' motion for a new trial. It stated as a reason that there were no grounds for changing in any way the court's decision made in December, 1966. Later the trial court struck the appellants' appeal to the Supreme Court, which was reinstated by order of the Supreme Court on the 1st day of May, 1967.

If the protest statement filed by the appellants with the County Treasurer upon their payment of the first half of the 1965 ad valorem taxes to the County Treasurer of Russell County on the 13th day of December, 1965, was sufficient to comply with the provisions of K. S. A. 79-2005, other points raised by the parties to this appeal become immaterial. We shall, therefore, proceed directly to this point.

The relevant portion of K. S. A. 79-2005 reads as follows:

"(1) Any taxpayer before protesting the payment of his taxes, shall be required, at the time of paying said taxes, to make and file a written statement with the county treasurer clearly stating the grounds on which the whole or any part of said taxes are protested, and shall further cite any law, statute, or facts on which such taxpayer relies in protesting the whole or any part of such taxes and mail a copy of such protest to the governing body of the municipality making the levy being protested, and: (a) If the grounds of such protest shall be that any tax levy or any part thereof is illegal, shall further state the exact portion of said taxes which is being protested; or (b) if the grounds of such protest shall be that the valuation or assessment of the property upon which the taxes so protested are levied is illegal or void, shall further state the amount of valuation or assessment which the taxpayer admits to be valid and the exact portion of said taxes which is being protested. The county treasurer shall dis-

burse to the proper funds all portions of taxes not so protested and he shall impound in a separate fund all portions of such taxes which are so protested."

Decisions in which the foregoing section of the statute, and its predecessor, were before this court have held that the statute must be clearly followed before an action may be brought to recover taxes paid under protest. (*State, ex rel., v. Board of County Comm'rs,* 172 Kan. 601, 242 P. 2d 527; *Kansas Gas & Elec. Co. v. Dalton,* 142 Kan. 59, 46 P. 2d 27; and *Henderson v. Montgomery County Comm'rs,* 147 Kan. 64, 75 P. 2d 816.)

It was said in the *Dalton* case:

"The written protest required by R. S. 1933 Supp. 79-2005 to be filed with the county treasurer by a taxpayer who protests the payment of his taxes should state clearly the grounds of protest and cite any law, statute, or facts on which the taxpayer relies. The statute contemplates that this statement shall contain all of the grounds upon which the taxpayer protests the payment of the taxes. The fact that it is sufficient as a protest on one ground does not authorize the taxpayer to seek upon other grounds the recovery of the taxes paid." (Syl. ¶ 2.)

The sufficiency of the protest is not affected by the manner in which the County Treasurer credits the amount of taxes paid under protest. (*Kaw Valley Drainage Dist. v. Zimmer,* 141 Kan. 620, 42 P. 2d 936.)

The trial court in construing 79-2005, *supra,* held the protest statement must be confined *to the payment* of taxes actually being made as distinguished from the total tax liability for the year. For this proposition the trial court relied upon subsection (1) (*a*) in 79-2005, *supra.* The trial court reasoned that in the protest statement the taxpayer "shall further state the exact portion of said taxes which is being protested," said taxes referring back to the payment set out previously in the statute.

Based upon the foregoing premise, the trial court said, "Now at the time plaintiffs made a payment of said taxes on December 13, 1965, they filed a protest for $20,112.51 out of a payment of $20,337.31."

The difficulty encountered in the lower court was occasioned by the fact that the Taxpayers paid only the first half of the 1965 taxes in December, 1965, as distinguished from a payment of the full amount of the 1965 taxes.

K. S. A. 79-2004a authorizes a taxpayer charged with personal property taxes on the tax books in the hands of the County Treasurer to pay the full amount of such taxes on or before the 20th day of December of the year in which the taxes are due, or one-half thereof

on or before the 20th day of December and the remaining one-half thereof on or before the 20th day of June next ensuing.

The trial court in construing 79-2005, *supra,* held the protest statement filed by the Taxpayers herein, as worded, required the Taxpayers to pay all of the 1965 taxes to the County Treasurer on December 13, 1965, to be valid. By reason thereof, the trial court held the protest statement void because it was not accompanied by the full payment of the 1965 taxes. On the other hand, the trial court said:

"If the plaintiffs, at the time of filing the protest on December 13, 1965, intended to protest only half of the amount stated, then the Court finds the statement of protest filed is void because it does not meet the requirements of clearness and exactness set out in K. S. A. 79-2005."

The substance of the trial court's conclusion was that the requirement of subsection (1) (*a*), that the protest statement set forth the exact portion of the taxes being protested, actually meant that the protest statement must set out the exact portion of the *tax payment* that was being protested.

It should be noted subsection (1) (*a*) in 79-2005, *supra,* pertains to a protest based upon an illegal tax levy, or any part thereof, whereas the basis of the protest in the instant action is covered by the provisions of subsection (1) (*b*)—*the valuation or assessment* of the Taxpayers' property. Under this provision the protest statement "shall further state the amount of valuation or assessment which the taxpayer admits to be valid and the exact portion of said taxes which is being protested."

It may be conceded the provisions of 79-2005, *supra,* are ambiguous, but in construing this section of the statute we think the learned trial judge became unduly engrossed in the payment of taxes as distinguished from the written protest statement that must be filed. The first sentence in section 79-2005, *supra,* begins, "Any taxpayer *before protesting* the payment of *his taxes,* shall be required" to do certain things. Thus, a condition precedent is imposed upon the taxpayer. He must "make and file *a written statement* with the county treasurer clearly stating the grounds on which *the whole or any part of said taxes* are protested," and further comply with the section in preparing the written statement.

Property is valued for ad valorem tax purposes on a yearly basis, and the taxes resulting from such valuation are levied on a yearly basis. (K. S. A. 79-309.) The taxpayer's, *"his,"* taxes referred to in 79-2005, *supra,* are the taxes levied for the year.

When is the taxpayer required to file his written protest statement? The section of the statute under scrutiny says, *"at the time of paying said taxes."* (Emphasis has been added to various words and phrases quoted from 79-2005, *supra*, to assist in understanding our construction of the section.)

The fact that a taxpayer protests the payment of ad valorem taxes as authorized by 79-2005, *supra*, should not deprive the taxpayer of the benefits of 79-2004a, *supra*. Yet nothing is said in 79-2005, *supra*, where a taxpayer pays his taxes by installments as authorized by 79-2004a, *supra*. On the facts in this case it is unnecessary to consider the appellants' argument that payment of the full levy of $40,674.62 prior to December 20, 1965, would have made the last half a voluntary payment, citing *Washington Township v. Hart*, 168 Kan. 650, 215 P. 2d 180, and the authorities cited therein. Whether a change in the statute since the *Hart* decision has effected a change in the law on this point is a question which we leave open.

In the instant case the Taxpayers filed their protest statement at the time they paid the first half of their 1965 taxes; the statement included all of their reasons for making the protest; the protest cited the law and facts upon which the Taxpayers relied in making the protest; and the statement was properly mailed. These facts are not questioned.

Where, as here, the taxpayer protests the payment of his taxes on the ground that the valuation or assessment of the property upon which the taxes are levied is illegal or void, the taxpayer must determine the valuation of his property which he concedes to be correct, the taxes attributable to that correct valuation, the valuation that he is protesting, and finally the taxes attributable to the protested valuation. Counsel for the appellees contend the County Treasurer of Russell County was authorized, as a basis for her action, to construe the protest statement together with the check stub accompanying the payment of the first half of the 1965 taxes, and the letter from the appellants' attorneys and the check stub accompanying the second half payment. Construing these documents together, it is said the protest statement is ambiguous and required the impounding of $20,112.51 out of each payment.

We see no reason under 79-2005, *supra*, for looking beyond the *written statement* filed with the County Treasurer protesting the payment of taxes to determine the sufficiency of the protest.

Here the Taxpayers challenged the valuation or assessment of their personal property in Russell County, and drafted their protest

statement to include a determination for each piece of property covering: (1) the assessor's valuation, (2) valid valuation, (3) taxes billed, (4) correct taxes, and (5) void taxes.

The provisions of subsection (1) (*b*), where the taxpayer's protest is based upon an illegal or void valuation or assessment of the property, lend credence to the construction of 79-2005, *supra*, that the written protest statement be geared to the taxes levied for the whole year.

The protest statement filed by the Taxpayers herein is clear and complies with the provisions of 79-2005, *supra*, in every respect. Had the County Treasurer of Russell County read the protest statement filed by the Taxpayers on December 13, 1965, when the first half of the 1965 taxes were paid under protest, we think she could readily have ascertained the amount of funds to be impounded as taxes paid under protest. But even had she been unable to do so, we think it immaterial. On matters of this nature, the County Treasurer is entitled to resort to the county attorney for legal advice upon which to rely.

The protest statement indicates in several places that the taxes being protested were $20,112.51 out of the total 1965 taxes of $40,674.62. Not only did the parties stipulate that the Taxpayers' total taxes for 1965 were $40,674.62, but the County Treasurer is obligated as a matter of law to know the total taxes due from the Taxpayers in 1965 from the records in her office. When one-half of this amount was paid on the 13th day of December, 1965, the portion of the payment being protested could easily be determined by simply dividing the total amount of the taxes protested by two. This would be $10,056.26. This was the amount she was required to impound in a separate fund as the portion of such taxes protested on the first payment. Similarly, upon the payment of the second half of the 1965 taxes the County Treasurer could determine the portion of the payment being protested by resort to the protest statement and impound $10,056.25 of the second payment.

The notations on the check stubs in connection with each payment clearly refer to the protest statement, as did the letter of transmittal upon payment of the second half of the 1965 taxes, and nothing contained in these documents warrants a strained construction of the protest statement.

The protest statement filed by the Taxpayers in the instant action complied with the provisions of 79-2005, *supra*, and the Taxpayers were not required upon the payment of the second half of the

1965 taxes to file an additional protest statement. The letter of transmittal dated the 14th day of June, 1966, whereby the Taxpayers paid the second half of the 1965 taxes, and the notation on the check stub relative to the payment of the second half of the 1965 taxes, made sufficient reference to the protest statement to apprise the County Treasurer of the exact portion of the taxes being paid under protest.

The judgment of the lower court is reversed.

FONTRON, J., concurs in the result.